UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE KARAS

-------------------------------------------------------x

JULIO PEREZ,

'10 CIV 08278

                       Plaintiff,                      Case No.:

      - against -                    **COMPLAINT**

PROGENICS PHARMACEUTICALS, INC.
and ROBERT BAKER,

                       Defendants,

-------------------------------------------------------x

        The plaintiff, Julio Perez ("Perez" or "plaintiff"), by his attorneys, Westermann, Sheehy, Keenan, Samaan & Aydelott, LLP, as and for his Complaint against the defendants, PROGENICS PHARMACEUTICALS, INC. ("Progenics") and ROBERT BAKER ("Baker") (collectively, "defendants"), alleges as follows:

### JURISDICTION AND VENUE

        1.    Plaintiff Perez brings this action to recover damages caused by the defendants' violations of the Sarbanes-Oxley Act of 2002 (the "Act"), 18 U.S.C. § 1514A.

        2.    This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343, 18 U.S.C. §1514A(b)(1)(B) and 29 C.F.R. §1980.114(a).

        3.    Venue lies in this judicial district pursuant to 28 U.S.C. §1391(b), as this action arose, in substantial part, within the Southern District of New York, where the unlawful employment practices and statutory violations alleged herein occurred, where the parties reside and many of the records pertinent hereto are maintained.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

4.      On September 12, 2008, plaintiff timely filed a complaint with the U.S. Department of Labor setting forth that defendants violated the Act.

5.      On or about December 23, 2008, plaintiff requested a hearing pursuant to 29 C.F.R. §1980.106, and the matter was assigned to Administrative Law Judge Daniel A. Sarno, Jr.

6.      On October 4, 2010, pursuant to 18 U.S.C. §1514A(b)(1)(B) and 29 C.F.R. §1980.114(b), plaintiff filed a Notice of Intent to File a Complaint in the U.S. District Court ("Notice of Intent") with the Office of Administrative Law Judges, Administrative Law Judge Daniel A. Sarno, Jr., and served copies of same on the defendants, and the Assistant Secretary of Occupational Safety and Health Administration, and the Associate Solicitor of the Division of Fair Labor Standards, U.S. Department of Labor.

7.      On October 6, 2010, Administrative Law Judge Daniel A. Sarno, Jr., issued an Order Dismissing Complaint on the ground that the Complainant had removed the case to district court.

8.      Plaintiff is filing this Complaint at least 15 days after the aforesaid Notice of Intent was filed and served.

### PARTIES

9.      Plaintiff Perez resides at 273D South Broadway, Tarrytown, New York 10591.

10.     Defendant Progenics is a Delaware Corporation doing business in the State of New York, County of Westchester.

11.     Defendant Progenics' principal place of business and headquarters are

2

located at 777 Old Saw Mill River Road, Tarrytown, New York 10591.

12.     Defendant Progenics is a publicly traded company on the NASDAQ Stock Market, its trading symbol is PGNX.

13.     Defendant Progenics is a biopharmaceutical company engaged in developing, commercializing, manufacturing, marketing and selling of human pharmaceutical products/drugs.

14.     Defendant Progenics has a class of securities registered under section 12 of the Securities and Exchange Act of 1934 (15 U.S.C. §78l).

15.     Defendant Progenics is required to file reports under section 15(d) of the Securities and Exchange Act of 1934 (15 U.S.C. §780(d)).

16.     At all relevant times, defendant Progenics was and is an "employer" as defined by the Act.

17.     At all relevant times, plaintiff was employed by defendant Progenics as a chemist until August 5, 2008.

18.     At all relevant times, plaintiff was a "covered employee" under the Act.

19.     At all relevant times, defendant Baker was a resident of the State of New York, County of Kings.

20.     At all relevant times, defendant Baker was and is an officer, agent and employee of defendant Progenics as defined by the Act.

21.     At all relevant times, defendant Baker was the Senior Vice President and General Counsel of defendant Progenics.

3

## FACTS

22.     In or about December 2005, Progenics and Wyeth Pharmaceuticals Division of Wyeth, Inc. ("Wyeth") entered into an agreement to develop, commercialize, manufacture, market and sell oral, subcutaneous and intravenous formulations of a drug called methylnaltrexone bromide ("MNTX") which is also known by the trade and/or brand name, Relistor (hereinafter "MNTX" or "Relistor)".

23.     Prior to and including December, 2005, Progenics was developing MNTX for the treatment of post-operative bowel dysfunction and opioid-induced constipation associated with chronic pain and advanced medical illness.

24.     Throughout his employment by Progenics, plaintiff worked as a chemist on the MNTX/Relistor Team with representatives of both Progenics and Wyeth, including but not limited to, extensive work in support of the formulation development of oral MNTX/Relistor.

25.     In 2007 and 2008 Progenics and Wyeth were conducting Phase 2 clinical trials of oral formulations, tablets and capsules, of Relistor.

26.     On or about May 22, 2008, Progenics and Wyeth issued a joint public announcement ("joint press release") regarding the results from the aforesaid Phase 2 clinical trial for the tablet formulation of oral Relistor.

27.     The aforesaid joint press release stated that "the study showed positive activity."

28.     The aforesaid joint press release stated that "the once daily oral formulation of Relistor showed statistically significant activity as assessed by the occurrence

4

of spontaneous bowel movements and other efficacy measures."

29.     In the aforesaid joint press release, Progenics stated, "we are pleased by the preliminary findings of this oral formulation."

30.     The joint press release did not state that the Phase 2 clinical trial of the oral Relistor tablets failed to show sufficient clinical activity to warrant advancement into Phase 3 clinical trials.

31.     The joint press release conveyed only favorable, positive information about the oral Relistor tablets Phase 2 clinical trials.

32.     In issuing the joint press release, Progenics and Wyeth withheld material negative, unfavorable results and information regarding the Phase 2 clinical trials of the oral Relistor tablets.

33.     Internal discussions at Progenics revealed to Perez that the Phase 2 clinical trials of the oral Relistor formulations, both tablets and capsules, failed to show sufficient clinical activity to warrant advancement into Phase 3 clinical trials.

34.     Internal discussions at Progenics revealed to Perez that the Phase 2 clinical trials of the oral Relistor formulations failed.

35.     Plaintiff was told by Progenics that more work had to be done on the oral formulations of Relistor before any further Phase 2 clinical trials could be conducted.

36.     In or about July, 2008, Perez received a document at Progenics, entitled "Relistor Development Strategy Update," which stated, *inter alia*, that the results from the oral Relistor Phase 2 clinical trials demonstrated that neither the tablet nor the capsule formulations had sufficient activity to satisfy the Confirm advancement criteria specified in

5

the approved target product profile, which meant the results were not sufficient to advance into Phase 3 clinical trials.

37.     The Relistor Development Strategy Update included a decision not to initiate oral Relistor Phase 3 clinical trials.

38.     The Relistor Development Strategy Update stated the results of the oral Relistor Phase 2 clinical trials did not meet the key elements of the pre-approved target product profile.

39.     The Relistor Development Strategy Update stated that the oral Relistor Phase 2 clinical trials did not meet the current target product profile.

40.     The Relistor Development Strategy Update stated that the results of the Phase 2 oral Relistor clinical trials showed that it was unlikely that either oral formulation of Relistor will demonstrate consistent and clinically meaningful effect in "Confirm," which referred to Phase 3 clinical trials.

41.     The Relistor Development Strategy Update stated that the results of the Phase 2 clinical trials of oral Relistor formulations do not support immediate entry into Phase 3 clinical trials for either the tablets or the capsules.

42.     The Relistor Development Strategy Update included the following recommendation regarding the Oral Relistor Development Program:

•     "Do not pursue immediate initiation of Phase 3 studies with either available oral tablets or capsule formulations."

43.     The Relistor Development Strategy Update stated that a new oral formulation was being developed.

6

44.     On August 4, 2008, plaintiff wrote a memorandum to Progenics' Senior Vice President Thomas Boyd, Ph.D. ("Boyd"), his department head, and defendant Baker, Progenics' Senior Vice President and General Counsel, entitled "Comments on Oral Relistor Phase 2 Clinical Trial Results."

45.     Plaintiff's August 4, 2008 memorandum addressed what he perceived to be the false and misleading nature of the aforesaid May 22, 2008 joint press release.

46.     Plaintiff's August 4, 2008 memorandum specifically addressed what he perceived to be inaccurate and misleading statements made to defendant Progenics' shareholders in violation of section 1341, 1343, 1344, or 1348, the rules and regulations of the Securities and Exchange Commission and/or any provision of the federal law relating to fraud against shareholders.

47.     Plaintiff's August 4, 2008 memorandum specifically addressed what he perceived to be inaccurate and misleading statements made to the public at large as potential investors in violation of section 1341, 1343, 1344, or 1348, the rules and regulations of the Securities and Exchange Commission and/or any provision of the federal law relating to fraud against shareholders.

48.     In submitting his August 4, 2008 memorandum to his supervisor Boyd and defendant Baker, plaintiff was engaging in protected activity under the Act.

49.     Defendants were aware that plaintiff engaged in protected activity on August 4, 2008.

50.     In response, on August 4, 2008 defendant Baker admonished plaintiff in a hostile manner and defendants immediately removed plaintiff's computer hard drive and

7

terminated his access to the company's computer network system, which prevented plaintiff from doing his job and communicating with other Progenics employees and Wyeth employees with whom he collaborated on the MNTX/Relistor Team.

51. Defendant Baker made the decision to terminate plaintiff because of his protected activity of August 4, 2008.

52. Defendants terminated plaintiff the next day, August 5, 2008.

53. Defendants' purported reason for terminating plaintiff on August 5, 2008 was and is false and pretextual.

54. Defendants' termination of plaintiff on August 5, 2008 was a violation of the Act.

55. Defendants' termination of plaintiff on August 5, 2008 was motivated, in part, by plaintiff's protected activity.

56. Plaintiff's protected activity was a contributing factor in defendants' termination of plaintiff on August 5, 2008.

57. At all relevant times, defendant Baker was acting within the course and scope of his employment by defendant Progenics and as an officer and agent of Progenics.

58. Defendants retaliated against plaintiff for engaging in protected activity in violation of the Act.

59. Defendants violated Progenics' own Code of Business Ethics and Conduct and its Whistleblower and Public Disclosure policies in retaliating against plaintiff and terminating his employment.

60. Defendant Baker misrepresented and/or withheld material information

from Progenics' Audit Committee regarding plaintiff's August 4, 2008 memorandum and protected activity and the real reason his employment was terminated.

61.  Progenics' Audit Committee was and is responsible for the investigation of reported violations of its Code of Business Ethics and Conduct and Whistleblower policies, the Act and other federal securities laws.

62.  Progenics' Disclosure Committee was and is responsible for receiving reports of suspected violations of its Public Disclosure policies and federal securities laws, including but not limited to, the Act.

63.  Defendant Baker was the Chairman of Progenics' Disclosure Committee in August, 2008 and thereafter.

64.  Plaintiff submitted his August 4, 2008 memorandum to defendants as required by the Act, other federal securities laws, and Progenics' Code of Business Ethics and Conduct and Public Disclosure and Whistleblower policies.

65.  Plaintiff submitted his August 4, 2008 memorandum to defendants in a good faith belief that the May 22, 2008 joint press release issued by Progenics and Wyeth was false and misleading in violation of the Act, other federal securities laws, and Progenics' own Code of Business Ethics and Conduct and Public Disclosure policies.

## FIRST CLAIM FOR VIOLATION OF SARBANES-OXLEY ACT

66.  Plaintiff repeats and realleges paragraphs "1" through "65"as set forth above.

67.  On or about August 4, 2008, rather than properly investigating plaintiff's good faith complaint about the false and misleading nature of the joint press

release, defendants unlawfully retaliated against plaintiff for his protected activity by admonishing plaintiff and removing plaintiff's computer hard drive and terminating his access to the company's computer network system, in violation of the Act.

68. On August 5, 2008, defendants retaliated against and terminated plaintiff because of his protected activity of August 4, 2008 and plaintiff was escorted immediately from the building to embarrass and humiliate him in front of other employees, in violation of the Act.

69. Plaintiff's protected activity on August 4, 2008 was a contributing factor to his termination on August 5, 2008.

70. Defendants' retaliation on August 4, 2008 and termination of plaintiff on August 5, 2008 were violations of the Act.

71. Defendants' purported reason for terminating plaintiff was and is a pretext for violation of the Act.

72. As a result of his unlawful termination on August 5, 2008, plaintiff was caused to and continues to suffer loss of wages.

73. As a result of his unlawful termination on August 5, 2008, plaintiff was caused to and continues to suffer loss of benefits.

74. As a result of his unlawful termination on August 5, 2008, plaintiff was caused to and continues to suffer loss of reputation.

75. As a result of his unlawful termination on August 5, 2008, plaintiff has been and will be caused to incur attorneys' fees.

76. As a result of his unlawful termination on August 5, 2008, plaintiff has

been or will be caused to incur expert witness fees.

77.    As a result of his unlawful termination on August 5, 2008, plaintiff has been and will be caused to incur the costs of litigation.

78.    As a result of his unlawful termination on August 5, 2008, plaintiff was caused to and continues to suffer emotional distress, depression and psychologic injuries.

79.    As a result of his unlawful termination on August 5, 2008, plaintiff should be reinstated to his former position with the same seniority he would have had but for the unlawful termination of his employment in violation of the Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that upon trial this Court enter judgment:

A.    Declaring that the actions and practices of defendants violated the Sarbanes-Oxley Act and adjoining such violations;

B.    Directing defendants to make plaintiff whole by providing him reinstatement with the same seniority he would have had but for the defendants' unlawful termination, back pay with interest, benefits, and compensatory damages for loss of reputation, emotional distress, depression and psychologic injuries;

C.    Awarding plaintiff special damages for litigation costs, reasonable attorney's fees, expert witness fees and costs as provided by the Sarbanes-Oxley Act; and

D.    Granting such additional relief as this Court deems just and proper.

11

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated:  November 2, 2010
         White Plains, New York

                              Respectfully submitted

                              **WESTERMANN, SHEEHY, KEENAN,
                              SAMAAN & AYDELOTT, LLP**


                              _____
                              Christopher P. Keenan, Esq. (CK8161)
                              cpkeenan@westerlaw.com
                              Attorneys for Plaintiff
                              222 Bloomingdale Road, Suite 305
                              White Plains, New York  10605
                              (914) 946-7770

12