# In The Matter Of:

*JULIO PEREZ, v*

*PROGENICS PHARMACEUTICALS, INC.,*

*October 1, 2014*

*SOUTHERN DISTRICT REPORTERS*

*500 PEARL STREET*

*NEW YORK, NY 10007*

*212 805-0330*

Original File ea11perc.txt

**Min-U-Script® with Word Index**

Ea11perc                                                                    Page 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   JULIO PEREZ,
 4              Plaintiff,
 5         v.                              10-CV-8278
 6   PROGENICS PHARMACEUTICALS,
     INC.,
 7
                Defendant.        Final Pretrial
 8                                   Conference
 9   ------------------------------x
                              New York, N.Y.
10                            October 1, 2014
                                  10:15 a.m.
11
     Before:
12
                    HON. SAMUEL CONTI,
13
                                District Judge
14
                       APPEARANCES
15
     JULIO PEREZ
16       Pro Se Plaintiff
17   FENSTERSTOCK & PARTNERS LLP
         Attorneys for Defendant
18   BY:  BLAIR C. FENSTERSTOCK, ESQ.
          THOMAS A. BROWN II, ESQ.
19
20
21
22
23
24
25
```

Ea11perc                                                                    Page 2

 1        (Case called)
 2        THE DEPUTY CLERK: Counsel, please come forward and
 3   state your appearances at the podium.
 4        MR. FENSTERSTOCK: Good morning, your Honor. Welcome
 5   to New York. My name is Blair Fensterstock and with me is Tom
 6   Brown. We represent the defendant Progenics Pharmaceuticals.
 7        THE COURT: All right.
 8        MR. PEREZ: Good morning, your Honor. I am Julio
 9   Perez, pro se plaintiff.
10        THE COURT: Do you have an attorney?
11        MR. PEREZ: No. I am pro se.
12        THE COURT: Are you acquainted with the rules of
13   court?
14        MR. PEREZ: Yes.
15        THE COURT: Well, apparently you haven't followed them
16   so far. Do you have a list of your witnesses? I always like
17   to get a list of the witnesses that are going to testify. Do
18   you have a list of witnesses?
19        MR. PEREZ: No, your Honor. No, I don't. I would
20   like to clarify --
21        THE COURT: Do you have any witnesses? I want you to
22   understand one thing. I appreciate the fact that you're pro
23   se, but because you're pro se doesn't mean you have any more
24   liberties than anybody else. I'm going to treat you like
25   you're a lawyer, because it wouldn't be fair to the other side.

Ea11perc                                                                    Page 3

 1   Both sides are entitled to a fair trial. I'll see that you get
 2   a fair trial, but I'm not going to give you any goodies. Do
 3   you understand that?
 4        MR. PEREZ: Yes.
 5        THE COURT: Okay. Now who are your witnesses?
 6        MR. PEREZ: Well, before I --
 7        THE COURT: You're going to have to speak up because I
 8   can't hear you.
 9        MR. PEREZ: Before I answer your question, your Honor,
10   may I make a clarification?
11        THE COURT: All I want to know, who are your
12   witnesses?
13        MR. PEREZ: I don't have that information, your Honor,
14   because I only received --
15        THE COURT: Wait a minute. I want to know right now,
16   who are your witnesses?
17        MR. PEREZ: I received your Honor's order only on
18   September 25th, one day after the pretrial submissions were
19   due. I have -- it was postmarked --
20        THE COURT: I want to know right now, who are your
21   witnesses? Unless you tell me now, nobody's going to testify
22   on your behalf, other than you. Do you understand that?
23        MR. PEREZ: May I give you an approximate number?
24        THE COURT: A what?
25        MR. PEREZ: May I --

Ea11perc                                                                    Page 4

 1        THE COURT: I don't want a number. I want the names
 2   of the people that are going to testify. Have you told the
 3   attorneys who your witnesses are?
 4        MR. PEREZ: No, your Honor.
 5        THE COURT: Well, you should tell the attorney. You
 6   had an attorney before. Didn't you have an attorney before you
 7   discharged him?
 8        MR. PEREZ: Yes.
 9        THE COURT: Did you have an attorney before?
10        MR. PEREZ: Yes, I did, but that never came up.
11        THE COURT: I want to tell you one thing. You either
12   have to tell me and tell the other side who your witnesses are
13   right now or they can't testify at trial. I don't want an
14   approximate number. I want names. Do you understand?
15        MR. PEREZ: I understand your Honor, but I received
16   the order the day after that information was requested by the
17   court.
18        THE COURT: Well, do you know who your witnesses are?
19   I'm tired of telling you the same thing over and over again. I
20   want you to tell me right now, who are your witnesses? Do you
21   have any witnesses?
22        MR. PEREZ: May I request some time to --
23        THE COURT: No, you request nothing. This is the date
24   we hear the pretrial motions. The other side has a right to
25   know who your witnesses are. When you file your claim you've

Ea11perc   Page 5

1  got to tell them who your witnesses are, potential witnesses
2  are.
3       MR. PEREZ: I am at a loss, your Honor.
4       THE COURT: What's that?
5       MR. PEREZ: I am at a loss to answer. I don't know
6  how to answer that question.
7       THE COURT: Do you intend to call anybody on your side
8  of the case?
9       MR. PEREZ: Yes.
10      THE COURT: Who?
11      MR. PEREZ: There are a number. Does the list need to
12 be final or can I give you a number?
13      THE COURT: No, the list has to be right now. You've
14 had plenty of time. The other attorneys have a right to find
15 out who your witnesses are going to be. They're going to want
16 to take their depositions. They may want to take their
17 deposition.
18      MR. PEREZ: It's --
19      THE COURT: This is not a trial by ambush. Do you
20 know what I mean?
21      MR. PEREZ: Oh, absolutely.
22      THE COURT: This is not a trial by ambush. Everybody
23 has a right to know who your witnesses are, and I'm telling
24 you, unless you can tell me right now who your witnesses are,
25 nobody is going to take the stand in your behalf. Is that

Ea11perc   Page 6

1  clear?
2       MR. PEREZ: Okay. So I have seen opposing counsel's
3  list of witnesses, and in addition to those --
4       THE COURT: Wait. What did you just say?
5       THE DEPUTY CLERK: Can you lift the microphone up to
6  your mouth?
7       MR. PEREZ: I'm sorry. Can you hear me better now?
8       THE COURT: I can hear you. I want a list of your
9  witnesses.
10      MR. PEREZ: In addition to the list, opposing
11 counsel's list, I would like to call Peter Lukacsko --
12      THE COURT: Did you tell the other side who you intend
13 to call?
14      MR. PEREZ: No.
15      THE COURT: Well, then you can't call them. You
16 cannot call them.
17      MR. PEREZ: But I'm sorry to belabor the point, but
18 it's like I said --
19      THE COURT: There's no belaboring of the point. They
20 have a right to know who your witnesses are. You haven't told
21 them who your witnesses are, they cannot testify.
22      So do you have any other problems in the case?
23      MR. PEREZ: The problem is I haven't given opposing
24 counsel the names of any witnesses --
25      THE COURT: Well, they're not going to testify. It's

Ea11perc   Page 7

1  very simple. That's the rule. I don't make the law, you know,
2  I try to interpret it as much as I can.
3       MR. PEREZ: But again, your Honor, I received your
4  Honor's order the day after --
5       THE COURT: You don't have to receive my order. The
6  rules of the court are such that you have to give them a list
7  of your witnesses. I'm through telling you about it. They're
8  not going to testify. The only person who's going to testify
9  is you. You got that?
10      MR. PEREZ: Because I haven't given the opposing
11 counsel any information about this, because I only got the
12 order after the fact.
13      THE COURT: You don't have to get an order. It's in
14 the rules of the court. Well, anyway, there's no witnesses on
15 your behalf going to testify. You're the only one that's going
16 to testify. Do you understand that? That's it.
17      So do you have any other problems in the case you'd
18 like to talk to the court about? I'd be happy to answer your
19 questions.
20      MR. PEREZ: I'm sorry? I didn't hear the last part.
21      THE COURT: Do you have any questions about the case
22 or the conduct of the trial?
23      MR. PEREZ: Well, it's to emphasize that I only --
24      THE COURT: I understand you're a PhD, aren't you?
25      MR. PEREZ: Yes.

Ea11perc   Page 8

1       THE COURT: And do you have an understanding of what
2  we're doing here this morning?
3       MR. PEREZ: Absolutely.
4       THE COURT: All right. Absolutely. You had an
5  attorney before, correct?
6       MR. PEREZ: Yes.
7       THE COURT: And you fired him, correct?
8       MR. PEREZ: Yes.
9       THE COURT: Okay. So you're acting as your own
10 attorney now. Do you know how to conduct a trial?
11      MR. PEREZ: Yes, I have -- yes, I have a basic idea
12 and information about it, yes.
13      THE COURT: Do you understand we're going to pick
14 eight jurors? Do you understand that?
15      MR. PEREZ: Yes.
16      THE COURT: We'll pick eight jurors, and each side has
17 a right to challenge a juror after I've asked them some
18 questions whether they know anybody involved in this case or
19 anything about this case. And then you have challenges. You
20 have three challenges and the other side has three challenges.
21 Do you understand that?
22      MR. PEREZ: Yes.
23      THE COURT: Okay.
24      MR. PEREZ: Also, I would like to clarify or to stress
25 that in your Honor's list of pretrial submissions, there are

Ea11perc                                                          Page 9

1  eight items, and I only got this list on September 25th.
2       THE COURT: I don't care when you got the list. You
3  got the list, and now's the time to hear it. Now tell me, have
4  you submitted your set of jury instructions? You haven't done
5  that either.
6       MR. PEREZ: No, because I got your Honor's order on
7  September 25th and they were due -- all the pretrial
8  submissions were due on September 24th, and I wrote a letter
9  to your Honor explaining --
10      THE COURT: I don't bother with letters. I bother
11 with my orders. That's the only thing I bother about. And you
12 either comply with them or you don't comply with them, one of
13 the two.
14      MR. PEREZ: Okay, but in my letter I requested an
15 adjournment --
16      THE COURT: You're not going to get an adjournment.
17 The trial is set on the date I set it. That's it. There's no
18 adjournment, period. We're going to try this case. We're not
19 going to continue it till we're all dead.
20      MR. PEREZ: But, your Honor, this case was on the
21 White Plains court before --
22      THE COURT: I told you, Mr. Perez, this case is tried
23 in this court on the date that I set it.
24      MR. PEREZ: Yes.
25      THE COURT: That's the date. So we don't have to

Ea11perc                                                         Page 10

1  discuss that anymore. That's it.
2       MR. PEREZ: Yes.
3       THE COURT: We're not going to go to White Plains or
4  Blue Plains or Pink Plains. It's going to stay right here.
5       MR. PEREZ: Yes. But the court asked me, for
6  instance, for the summary judgment motion when it came time to
7  set the schedule.
8       THE COURT: Mr. Perez, we're past that stage. Summary
9  judgment motion doesn't mean anything right now. We're going
10 to have a trial. We're going to have a trial and that's the
11 time for you to put on your case.
12      MR. PEREZ: Yes, but the court, for instance -- this
13 is just an example. In consideration of my pro se status, the
14 court asked me how much time I would need to file my documents
15 and it was suggested two months, and I said that's reasonable,
16 and I made that deadline.
17      THE COURT: Mr. Perez, I don't care what any other
18 judge said. I don't bother about that. I'm telling you, we're
19 going to try this case on the date that I set it. If you're
20 here, fine. If you're not here, that's your problem.
21      MR. PEREZ: Well, yes. Well, your Honor, given that
22 your Honor's order was postmarked on September 23rd --
23      THE COURT: We're through with that. We're through
24 with that. I'm telling you what the order is. You're supposed
25 to be here in court on the date that I set, and that's it.

Ea11perc                                                         Page 11

1  Okay?
2       MR. PEREZ: Yes. Your Honor, without pretrial
3  submissions, without time for preparation --
4       THE COURT: You want to submit something to me, submit
5  it by next Tuesday. You want to do that? Put in writing. I
6  don't like letters. Put it in motions and file it with the
7  court and I'll read it. Do you want to do that? Whatever you
8  want to file, file next Tuesday.
9       MR. PEREZ: Okay. May I submit what I haven't had,
10 the most important, the most critical items? Because there is
11 a long list and --
12      THE COURT: What are the items? Do you know what they
13 are right now? Tell me. Give me the order right now. What
14 are they?
15      MR. PEREZ: Yes. Well, okay. Your Honor asks for
16 joint agreed-upon brief statement of the case to be read to the
17 jury prior to --
18      THE COURT: All right. Did you give me that?
19      MR. PEREZ: No.
20      THE COURT: Well, then --
21      MR. PEREZ: I haven't given you anything, your Honor.
22      THE COURT: Well, I'll tell you what you do. You give
23 it to me next Tuesday morning, a brief statement of what you
24 think the trial is about so I can tell the jury what it's
25 about.

Ea11perc                                                         Page 12

1       MR. PEREZ: Well, it's a list of eight items, and it
2  would be --
3       THE COURT: Give me another one. Give me another one.
4       MR. PEREZ: Well, okay. Well, it's --
5       THE COURT: Why didn't you file it with the court?
6  Why didn't you file that with the court?
7       MR. PEREZ: I'm sorry?
8       THE COURT: I mean, I'm trying to be helpful to you
9  here. It may not sound that way.
10      MR. PEREZ: No, I appreciate that.
11      THE COURT: It's very difficult when you're dealing
12 with a pro se litigant who should have an attorney. You don't
13 have an attorney. You had an attorney and you fired him. I
14 don't want to ask why you fired him. I know the reasons people
15 fire their attorneys is because they don't like what the
16 attorney tells them. That's been my experience, anyway.
17      MR. PEREZ: But, your Honor, also, the previous
18 opposition counsel filed a letter requesting an adjournment --
19      THE COURT: I don't care about the past. All I care
20 about is the future.
21      MR. PEREZ: But he gave a number of reasons why, even
22 for him, it would be --
23      THE COURT: Mr. Perez, I'm through with this right
24 now. The trial is on the date that I set. Do you know the
25 trial date?

Ea11perc
Page 13

1      MR. PEREZ: Yes, I know the trial date.
2      THE COURT: All right.  Well, then that's the date.
3  I'll see you then.
4      Does the defendant have anything to say?
5      MR. FENSTERSTOCK: Your Honor, would you like me to
6  come up?
7      THE COURT: Come up here, yes.
8      MR. PEREZ: Should I --
9      THE COURT: You can stay there.  Stay there,
10  Mr. Perez.
11      MR. FENSTERSTOCK: So the record is clear, your Honor,
12  and I know the Second Circuit has an abuse of discretion
13  standard with respect to pro se litigants so I just want to
14  make a couple of very brief statements to clarify and correct
15  what Mr. Perez said on the record, which was false.  He said
16  that he only received your order on September 25th.  That is
17  a fabrication.  As soon as we noticed our appearance -- and you
18  know we're new lawyers to the case -- which was on
19  September 19, on September 20th, at 12:40 p.m., I left a
20  substantive message for Mr. Perez.  In that message I said, "I
21  hope you received the pretrial order.  If you have any
22  questions, call me."
23      At 8:18 in the evening, on September 20th, he called
24  me and he e-mailed me and he acknowledged receipt of my e-mail
25  by substantive voice message, confirmed that his contact

Ea11perc
Page 14

1  information in the Southern District ECF system was correct,
2  and stated he would call me on Monday morning to have a full
3  telephone call.  We then confirmed over the weekend and we had
4  a full telephone call on Monday morning, the 22nd.
5      To make sure that he received the pretrial order
6  again, I sent it to him by e-mail on September 21, Sunday, four
7  days before he says he got it.
8      We had a long substantive call on Monday, the 22nd,
9  from 9:00 in the morning till 9:26.  We talked about the
10  pretrial order, we talked about everything that had to be
11  submitted.  I told him, to facilitate his response and his
12  compliance with the order, we would send him the joint brief
13  statement, draft, and the jury instructions, which we did.
14      We sent him our draft the next morning and he followed
15  that up with an e-mail to me saying thank you, and to quote
16  him, he said, "for putting together both drafts that can serve
17  as a starting point in our efforts to reach a mutual agreeable
18  final version." That was Tuesday, September 23rd.  So all
19  this happened two days before he says he got the order.  I want
20  to make the record absolutely clear.
21      Then on the 24th, we e-mailed him again with all of
22  our pretrial documents that we had to file pursuant to the
23  order.  We worked day and night to comply with your order.  And
24  at 9:19 that night, on the 24th, he acknowledged receipts of
25  my e-mails and all of the documents.  So he had received both

Ea11perc
Page 15

1  drafts, all of the documents that we had to prepare, pursuant
2  to your order, a day before and sometimes four days before, he
3  just represented to your Honor that he received them.  That
4  should clear up the record with respect to Mr. Perez's
5  knowledge of when he had to comply.
6      Your Honor, we also have five in limine motions on
7  today.  I don't know if you've had a chance to review them.
8  And they're all filed.
9      THE COURT: All right.  Yes.  You have one motion to
10  preclude Mr. Perez from referring to a theory that he was
11  terminated in retaliation for reporting any omission.  What do
12  you mean by that?
13      MR. FENSTERSTOCK: Your Honor, one of the issues in
14  this case is a press release which was issued by Progenics and
15  Wyeth, joint press release with respect to progress on a drug,
16  and that is what Mr. Perez has said.  That was a May press
17  release.  In August he wrote a memo which said that that press
18  release was totally false.  He was terminated as a result of
19  taking confidential information subsequently.  He has said,
20  throughout the case, that one of the reasons he was terminated
21  was not only because the press release was false and therefore,
22  in his words, fraudulent to stockholders but that he tried to
23  argue in the summary judgment that it was because my client
24  omitted certain facts relative to the progress of the drug; in
25  other words, going from Phase II to Phase III tests.  Judge

Ea11perc
Page 16

1  Karas, in his decision on reconsideration, specifically said
2  that plaintiff cannot base his Sarbanes-Oxley claim on the
3  theory that he was terminated in retaliation for providing any
4  information about an omission.  Then he says Perez is precluded
5  from proceeding on the theory that he reasonably believed the
6  May 22nd joint press release was fraudulent because it
7  omitted information about Phase III clinical trials.  He goes
8  through the decision for reconsideration and he says several
9  times that Mr. Perez's claims are based on representations,
10  statements, affirmative statements, that were made in the press
11  release, not omissions, and therefore, he cannot proceed on
12  omissions.
13      We are concerned that Mr. Perez will bring in all
14  sorts of other things like we didn't mention Phase III, we
15  didn't mention this, we didn't mention that, and that obviously
16  cannot be the basis of his claim, and it would be prejudicial,
17  under Federal Rule of Evidence 401, before the jury.  So that's
18  our first motion in limine, to preclude that evidence.  And
19  we've spelled it out in our memorandum, supporting memorandum,
20  your Honor.
21      THE COURT: All right.  The next is to preclude
22  Mr. Perez from referencing any information that he did not know
23  as of August 4, 2008 to prove his alleged reasonable belief
24  under the Sarbanes-Oxley Act.
25      MR. FENSTERSTOCK: Under Section 806 of

Ea11perc                                                                                    Page 17

1  Sarbanes-Oxley, on a retaliation claim, Mr. Perez, in order to
2  win, has to show a reasonable belief that at the time of his
3  August 4, 2008 memo, that Progenics violated a federal law.  He
4  claims that as of that time, we committed fraud.  Under
5  Sarbanes-Oxley and the cases that follow it, that requires
6  actual belief at the time on the basis of knowledge available
7  to him, or somebody in his position and circumstances at the
8  time.  That requires a subjective and objective analysis of the
9  elements.  Under the Sharkey case in the Southern District and
10 every other case that has discussed this, as well as Federal
11 Rule of Evidence 401, he cannot use after-the-fact evidence to
12 show that he believed on August 4th certain things were
13 false.  That's all it is, your Honor.  It's pretty simple.
14 It's pretty straightforward.
15         THE COURT: You understand that, Mr. Perez?  Do you
16 understand what he said?
17         MR. PEREZ: Yes.  I would like an opportunity to
18 respond.
19         THE COURT: Well, those motions are granted.  Those
20 motions are granted.  That means his motions are permissible.
21         MR. PEREZ: I'm sorry, your Honor.  I just said that I
22 would like an opportunity now to respond.
23         THE COURT: You have to speak into the microphone.  I
24 can't hear you.
25         MR. PEREZ: Yes, your Honor.  I said I would reply to

Ea11perc                                                                                    Page 18

1  his motions in limine.  First of all, I haven't read them
2  through, because I have received a long list of documents, so I
3  don't even know which document he's referring to, number one.
4  But just to give your Honor brief information that I have, for
5  instance, he's saying he filed a motion in limine, which I
6  haven't seen, saying that --
7          THE COURT: Did you give him the motion in limine?
8          MR. FENSTERSTOCK: Absolutely, your Honor.  We gave
9  him everything we filed as we filed it, and we did an affidavit
10 of service that's in the docket sheet and on the record, your
11 Honor.  We followed every single rule that your Honor
12 prescribes.
13         MR. PEREZ: Yes, your Honor, but for today, first of
14 all, for today's conference, what was on the agenda was a
15 discussion of the pretrial submissions and the pretrial date,
16 not the specifics, how I should reply.  As far as I know, there
17 was not going to be a discussion about the merit or lack of
18 merit of --
19         THE COURT: What we're discussing now is what you can
20 say to the jury.  That's what we're discussing now.  You can't
21 tell the jury you learned something after that you didn't have
22 at the particular time you made the overture.
23         MR. PEREZ: Well, yes, I am aware of that concept and
24 I agree with it, but the problem is that, number one, he's
25 saying that my claim was that the defendant omitted certain

Ea11perc                                                                                    Page 19

1  facts, and what I communicated with defendant was that it
2  presented a rosy picture of the developments, which was
3  essentially that was information that was misleading to
4  investors and that it was that there was a press release in
5  which everything presented was positive when in reality, behind
6  doors --
7          THE COURT: Did you present a press release?  Were you
8  the one that gave the press release?
9          MR. PEREZ: Well, I brought it to the attention of my
10 employer at the time that the contents --
11         THE COURT: Do you have a copy of the press release?
12         MR. PEREZ: Not in front of me.
13         THE COURT: I mean do you have it --
14         MR. PEREZ: Absolutely.
15         THE COURT: -- to give to the jury?
16         MR. PEREZ: Yes.
17         THE COURT: Well, the press release speaks for itself.
18 Whatever this press release says, it says.
19         MR. PEREZ: Yes, I agree.
20         THE COURT: But you can't give any explanation over
21 and above that.  The press release says what it says and that's
22 it.  And you can't --
23         MR. PEREZ: Oh, yes.  Oh, yes, absolutely.  I am in
24 agreement with that.
25         THE COURT: Okay.

Ea11perc                                                                                    Page 20

1          MR. PEREZ: I wrote a memo to my employer at the time
2  explaining in detail with examples why it was, behind closed
3  door, what the company directors were saying: this drug, the
4  formulation of this drug does not meet --
5          THE COURT: Your whole case is based on the fact that
6  you made this communication --
7          MR. PEREZ: Yes.
8          THE COURT: -- to your employer and the employer
9  didn't like what you said and so he fired you.
10         MR. PEREZ: Yes.
11         THE COURT: That's it.
12         MR. PEREZ: Yes.
13         THE COURT: So what you do is you show the jury.
14 That's in evidence.  You'll present it in evidence, what the
15 press release says.  You understand that?
16         MR. PEREZ: Yes.
17         THE COURT: What the press release says and that's
18 all.  And then you can comment on the press release, but you
19 can't give any flowery stuff on the outside of it, you
20 understand?
21         MR. PEREZ: Yes.
22         THE COURT: You can't tell the jury anything flowery.
23 You can't say that.  You have to say exactly what the press
24 release says.  That's up to the jury to decide, with other
25 evidence they may have, whether you're right or not.

Ea11perc                                                         Page 21

1      MR. PEREZ: Yes, I understand.
2      THE COURT: All right.
3      MR. PEREZ: If I understand correctly, there were a
4  number of motions in limine, so --
5      THE COURT: Well, I haven't gone through them yet.
6  We're going to go down them.
7      MR. PEREZ: Well, I didn't think that was the reason
8  for calling this conference at the time, when I came here to
9  request an adjournment, and I --
10     THE COURT: You're not going to get an adjournment so
11 just forget that.
12     Number two is to preclude Mr. Perez from testifying in
13 a narrative form.  Now I'm going to allow you to testify in a
14 narrative form.  I'm going to allow him to do that.  But I'm
15 going to tell the jury that your opposing counsel has a right
16 to interrupt you at any time during your narrative form and
17 make an objection.  I'll explain to the jury that they have a
18 right to do that.  See, the problem is, you may be saying
19 something on your narrative form that's objectionable and it's
20 not proper.  It may be hearsay or there may be some other
21 objectionable reason for it, and he has a right to object to
22 that, and I'll tell the jury that, that he has a right and an
23 obligation to his client to do that.  Not that he's trying to
24 interrupt you telling your story, but your story has to be
25 straightforward.  Do you know what hearsay evidence is?

Ea11perc                                                         Page 22

1      MR. PEREZ: Yes.
2      THE COURT: All right.  Well, then you can't give any
3  hearsay evidence.  It's only direct evidence of what you
4  yourself know, okay?
5      MR. PEREZ: Yes.  Also, your Honor, he also described
6  another motion, about me having a reasonable belief at the
7  time, and my understanding is that what the law says is that
8  it's a reasonable person --
9      THE COURT: The jury decides whether it's a reasonable
10 belief.
11     MR. PEREZ: Yes, but then opposing counsel is arguing
12 that the reasonable belief should be only what was known to me
13 at the time.
14     THE COURT: Yes.
15     MR. PEREZ: But that various testimony of witnesses
16 that were presented with the evidence of what was --
17     THE COURT: There are going to be no witnesses in your
18 behalf because you haven't notified them.
19     Counsel, has he notified you of any witnesses?
20     MR. FENSTERSTOCK: He has not, your Honor.
21     THE COURT: Okay.  This case was filed when, in 2010?
22     MR. FENSTERSTOCK: 2010 and was preceded by a
23 Department of Labor --
24     THE COURT: Department of Labor application, right.
25     MR. FENSTERSTOCK: Since 2008, right.

Ea11perc                                                         Page 23

1      MR. PEREZ: Just to be accurate, I was terminated on
2  August 5, 2008, and a few weeks later, I filed that complaint.
3      THE COURT: You filed an application with the
4  Department of Labor.
5      MR. PEREZ: With the Department of Labor.
6      THE COURT: Yes.
7      MR. PEREZ: Also, just to clarify something opposing
8  counsel said at the beginning of his presentation --
9      THE COURT: The only thing you can testify to is what
10 you know, not what somebody else knows, because you don't have
11 any witnesses here to testify to that.
12     MR. PEREZ: Yes, but your Honor, what Sarbanes-Oxley
13 says is that in finding reasonable belief is what somebody with
14 similar qualifications, somebody, one of his peers, what
15 conclusion would he draw from --
16     THE COURT: Excuse me for a moment.  Your theory is
17 that you sent the memo and they didn't like it and they fired
18 you.
19     MR. PEREZ: Yes.
20     THE COURT: All right.  So that's it.  So it's up to
21 the jury to decide whether that's right or not.
22     MR. PEREZ: Yes.  Okay.  But there's a distinction
23 that I want to make.
24     THE COURT: Don't make it to me.  I don't want to hear
25 any distinction right now.  Let's go to the next one here.

Ea11perc                                                         Page 24

1      MR. PEREZ: I'm sorry, your Honor.  I couldn't hear.
2      THE COURT: I'm just saying, we'll go on to the next
3  one.  I'm tired of listening to these descriptions.
4      Now the next one is for an order permitting Progenics
5  to take the deposition of Bruce Schneider to preserve his trial
6  testimony.  What's the situation on that?  Who is this fellow?
7      MR. FENSTERSTOCK: Yeah.  Dr. Schneider submitted an
8  affidavit in 2013 on the summary judgment motion.  He is a key
9  witness.  He was an executive vice president/chief of
10 operations in charge of project oversight and a PhD at Wyeth.
11 You remember Wyeth had a joint venture basically --
12     THE COURT: Why wasn't his deposition taken before?
13     MR. FENSTERSTOCK: Well, your Honor, we were not
14 counsel then, but it is not unusual, as you know, if you have a
15 friendly witness, not to take his deposition and produce him at
16 trial.  As soon as we appeared in this case, as soon as, the
17 second we appeared in the case, we contacted Dr. Schneider.  We
18 asked him if he would be available on October 28th.  He wrote
19 me and he said:  No, I'm out of the country.
20     THE COURT: Are you trying to tell me he's unavailable
21 for deposition at that particular time?  What are you trying to
22 tell me?  Why do you want to take his deposition now and you
23 didn't take it before?
24     MR. FENSTERSTOCK: Should it have been taken before,
25 your Honor?  I'm not going to second-guess my previous counsel.

Ea11perc                                                       Page 25

1  He is a key witness which the jury should be able to hear. He
2  put in a very substantive affidavit from the Wyeth side, which
3  talked about the press release, which talked about the process,
4  which talked about Dr. Perez's memo.
5         THE COURT: He's your witness?
6         MR. FENSTERSTOCK: Yes, your Honor.
7         THE COURT: Why do you have to take his deposition
8  before?
9         MR. FENSTERSTOCK: Because he's going to be
10 unavailable. He's out of the country.
11        THE COURT: Why didn't you tell me that in the first
12 place?
13        MR. FENSTERSTOCK: I thought I did, your Honor.
14        THE COURT: Maybe you did and I didn't hear. When can
15 you take the deposition?
16        MR. FENSTERSTOCK: He gave me dates of October 7th
17 to 10th, October 14th, and October 16th, so I will get to
18 him and get a date. One of those dates he will be deposed.
19        THE COURT: Mr. Perez, do you understand he wants to
20 take this doctor's deposition?
21        MR. PEREZ: Yes. May I comment?
22        THE COURT: What date is agreeable to you?
23        MR. PEREZ: May I comment, your Honor?
24        THE COURT: No, I don't want to hear. I'm going to
25 allow the deposition to be taken. What date do you like? Give

Ea11perc                                                       Page 26

1  him the dates again.
2         MR. PEREZ: Yes, but your Honor --
3         THE COURT: October 7th through 10th,
4  October 14th, and October 16th. Do you want to agree on
5  October 16th?
6         MR. PEREZ: But it's --
7         THE COURT: You're not going to say anything. Just
8  tell me the date you want. I granted it.
9         MR. FENSTERSTOCK: October 14th or 16th? Which
10 one would you like?
11        MR. PEREZ: What is 14th? What day of the week is
12 that?
13        MR. FENSTERSTOCK: I don't have my calendar.
14        MR. PEREZ: No, 14th would be fine.
15        THE COURT: What time?
16        MR. FENSTERSTOCK: 10:00 in the morning?
17        THE COURT: 10:00 in the morning, Mr. Perez?
18        MR. PEREZ: Yes. And for how long?
19        THE COURT: Where? Tell him where.
20        MR. FENSTERSTOCK: Well, he lives outside of
21 Philadelphia, your Honor.
22        MR. PEREZ: No.
23        THE COURT: No. Here.
24        MR. PEREZ: In White Plains.
25        THE COURT: We want him here in New York. Where is he

Ea11perc                                                       Page 27

1  going to be?
2         MR. FENSTERSTOCK: He'll be at our office on
3  October 14th.
4         THE COURT: Do you know where his office is?
5         MR. PEREZ: Yes.
6         THE COURT: Fine. 10:00 in the morning on that date.
7         MR. FENSTERSTOCK: Thank you, your Honor.
8         THE COURT: All right. You'll be there.
9         MR. PEREZ: Yes.
10        THE COURT: Okay. Fine.
11        MR. FENSTERSTOCK: And there's one other in limine
12 motion, your Honor.
13        THE COURT: Yes. To preclude Mr. Perez from referring
14 to his alleged damages for loss of reputation. There's no loss
15 of reputation, emotional distress, depression, or psychological
16 injuries involved. The only thing you're entitled to is back
17 pay. The only thing you're entitled to is back pay in
18 Sarbanes-Oxley.
19        MR. PEREZ: There's a list of damages in the
20 Sarbanes-Oxley law, your Honor.
21        THE COURT: There's no emotional distress. What
22 damages are you claiming?
23        MR. PEREZ: Well, off the top of my head, it's, yes,
24 emotional distress --
25        THE COURT: No, you can't. The jury is not going to

Ea11perc                                                       Page 28

1  decide emotional distress.
2         MR. PEREZ: Pain and suffering. I have to --
3         THE COURT: No pain and suffering. Just back pay.
4         MR. PEREZ: And reinstatement.
5         THE COURT: Do you understand I don't make these laws?
6         MR. PEREZ: Yes.
7         THE COURT: Under the Sarbanes-Oxley, there's no pain
8  and suffering, no emotional distress, none of that business.
9  It's just back pay.
10        MR. PEREZ: Your Honor, there's back pay and then also
11 it says reinstatement to the position that employee would have
12 had --
13        THE COURT: No, no, no, no. You're just going to get
14 back pay. Back pay. Are you prepared to tell the jury what
15 your back pay was and how much you're entitled to?
16        MR. PEREZ: Yes.
17        THE COURT: All right. Fine. That's it. Okay.
18        MR. FENSTERSTOCK: Your Honor, just to clarify,
19 because I don't want there to be an error on the record, under
20 Sarbanes-Oxley, Section 806, should he prevail, should
21 Mr. Perez prevail, he is entitled to back pay with interest,
22 litigation costs, expert witness fees, reasonable attorney's
23 fees, and reinstatement. Those are specifically provided in
24 the statute, your Honor.
25        THE COURT: Yes, but the jury doesn't decide that. I

Ea11perc Page 29

1 decide that.
2      MR. FENSTERSTOCK: Yes. Thank you, your Honor.
3      THE COURT: The only thing the jury decides is back
4 pay.
5      MR. FENSTERSTOCK: Thank you, your Honor. I just
6 wanted to clarify.
7      THE COURT: Yes, yes. Okay?
8      MR. PEREZ: Yes. Your Honor, yes. May I make a
9 comment?
10      THE COURT: Yes, make a comment.
11      MR. PEREZ: Because it's very important. It goes to
12 my character. Opposing counsel stated that I had received the
13 order prior -- that he forwarded it to me prior to the day the
14 documents were due. He did that and then he also sent -- we
15 had a discussion on Monday morning in which he stated that your
16 Honor had already denied the previous opposing counsel's
17 request for adjournment.
18      THE COURT: Mr. Perez, listen. I heard what you said,
19 I heard what he said. I don't need any more. I'll tell you
20 this. I always ask for the attorneys to get together and
21 jointly agree on a set of jury instructions. I know I'm not
22 going to get that from you and I know you're not going to get
23 together. I've got his copy. I'll make my own copy of the
24 jury instructions that the jury has to see. I'll give you a
25 copy of that before I read it to the jury and you'll have an

Ea11perc Page 30

1 opportunity to go over it and make any objections you want to
2 make to the instructions that I'm going to give. So you don't
3 have to give me any instructions. I'll do that myself.
4      MR. PEREZ: Okay. Yes, I appreciate that, your Honor.
5 And just to remind your Honor that this is a case that is more
6 complicated than it appears.
7      THE COURT: It's not complicated. There's no such
8 thing as a complicated case. The only complication is the
9 attorneys make it complicated. There case is not complicated.
10 It's a simple case.
11      MR. PEREZ: Yes. But going to the facts, all this
12 started with retaliation when I opposed the use of another
13 drug.
14      THE COURT: I don't want to hear that. The jury hears
15 that. I've heard enough. I've read all your papers. I know
16 what the case is all about. So I'll see you the date of the
17 trial. Okay?
18      MR. FENSTERSTOCK: Thank you, your Honor.
19      THE COURT: All right. Nice seeing you. Have a good
20 day.
21                o0o
22
23
24
25

**A**

**able (1)**
   25:1
**above (1)**
   19:21
**absolutely (7)**
   5:21;8:3,4;14:20;
   18:8;19:14,23
**abuse (1)**
   13:12
**accurate (1)**
   23:1
**acknowledged (2)**
   13:24;14:24
**acquainted (1)**
   2:12
**Act (1)**
   16:24
**acting (1)**
   8:9
**actual (1)**
   17:6
**addition (2)**
   6:3,10
**adjournment (7)**
   9:15,16,18;12:18;
   21:9,10;29:17
**affidavit (3)**
   18:9;24:8;25:2
**affirmative (1)**
   16:10
**after-the-fact (1)**
   17:11
**again (5)**
   4:19;7:3;14:6,21;
   26:1
**agenda (1)**
   18:14
**agree (4)**
   18:24;19:19;26:4;
   29:21
**agreeable (2)**
   14:17;25:22
**agreed-upon (1)**
   11:16
**agreement (1)**
   19:24
**alleged (2)**
   16:23;27:14
**allow (3)**
   21:13,14;25:25
**always (2)**
   2:16;29:20
**ambush (2)**
   5:19,22
**analysis (1)**
   17:8
**anymore (1)**
   10:1
**apparently (1)**
   2:15

**appearance (1)**
   13:17
**appearances (1)**
   2:3
**appeared (2)**
   24:16,17
**appears (1)**
   30:6
**application (2)**
   22:24;23:3
**appreciate (3)**
   2:22;12:10;30:4
**approximate (2)**
   3:23;4:14
**argue (1)**
   15:23
**arguing (1)**
   22:11
**attention (1)**
   19:9
**attorney (11)**
   2:10;4:5,6,6,9;8:5,
   10;12:12,13,13,16
**attorneys (5)**
   4:3;5:14;12:15;
   29:20;30:9
**attorney's (1)**
   28:22
**August (5)**
   15:17;16:23;17:3,12;
   23:2
**available (2)**
   17:6;24:18
**aware (1)**
   18:23

**B**

**back (10)**
   27:16,17;28:3,9,10,
   14,14,15,21;29:3
**base (1)**
   16:2
**based (2)**
   16:9;20:5
**basic (1)**
   8:11
**basically (1)**
   24:11
**basis (2)**
   16:16;17:6
**beginning (1)**
   23:8
**behalf (4)**
   3:22;5:25;7:15;
   22:18
**behind (2)**
   19:5;20:2
**belabor (1)**
   6:17
**belaboring (1)**
   6:19
**belief (7)**
   16:23;17:2,6;22:6,
   10,12;23:13
**better (1)**
   6:7
**Blair (1)**
   2:5
**Blue (1)**
   10:4
**Both (3)**
   3:1;14:16,25
**bother (4)**
   9:10,10,11;10:18
**brief (5)**
   11:16,23;13:14;
   14:12;18:4
**bring (1)**
   16:13
**brought (1)**
   19:9
**Brown (1)**
   2:6
**Bruce (1)**
   24:5
**business (1)**
   28:8

**C**

**calendar (1)**
   26:13
**call (10)**
   5:7;6:11,13,15,16;
   13:22;14:2,3,4,8
**called (2)**
   2:1;13:23
**calling (1)**
   21:8
**came (3)**
   4:10;10:6;21:8
**can (13)**
   5:12,24;6:5,7,8;7:2;
   11:24;13:9;14:16;
   18:19;20:18;23:9;
   25:14
**care (4)**
   9:2;10:17;12:19,19
**Case (27)**
   2:1;5:8;6:22;7:17,
   21;8:18,19;9:18,20,22;
   10:11,19;11:16;13:18;
   15:14,20;17:9,10;20:5;
   22:21;24:16,17;30:5,8,
   9,10,16
**cases (1)**
   17:5
**certain (3)**
   15:24;17:12;18:25
**challenge (1)**
   8:17
**challenges (3)**
   8:19,20,20
**chance (1)**
   15:7

**character (1)**
   29:12
**charge (1)**
   24:10
**Circuit (1)**
   13:12
**circumstances (1)**
   17:7
**claim (5)**
   4:25;16:2,16;17:1;
   18:25
**claiming (1)**
   27:22
**claims (2)**
   16:9;17:4
**clarification (1)**
   3:10
**clarify (6)**
   2:20;8:24;13:14;
   23:7;28:18;29:6
**clear (4)**
   6:1;13:11;14:20;
   15:4
**CLERK (2)**
   2:2;6:5
**client (2)**
   15:23;21:23
**clinical (1)**
   16:7
**closed (1)**
   20:2
**comment (5)**
   20:18;25:21,23;29:9,
   10
**committed (1)**
   17:4
**communicated (1)**
   19:1
**communication (1)**
   20:6
**company (1)**
   20:3
**complaint (1)**
   23:2
**compliance (1)**
   14:12
**complicated (5)**
   30:6,7,8,9,9
**complication (1)**
   30:8
**comply (4)**
   9:12,12;14:23;15:5
**concept (1)**
   18:23
**concerned (1)**
   16:13
**conclusion (1)**
   23:15
**conduct (2)**
   7:22;8:10
**conference (2)**
   18:14;21:8
**confidential (1)**
   15:19
**confirmed (2)**
   13:25;14:3
**consideration (1)**
   10:13
**contact (1)**
   13:25
**contacted (1)**
   24:17
**contents (1)**
   19:10
**continue (1)**
   9:19
**copy (4)**
   19:11;29:23,23,25
**correctly (1)**
   21:3
**costs (1)**
   28:22
**Counsel (11)**
   2:2;6:24;7:11;12:18;
   21:15;22:11,19;23:8;
   24:14,25;29:12
**counsel's (3)**
   6:2,11;29:16
**country (2)**
   24:19;25:10
**couple (1)**
   13:14
**COURT (149)**
   2:7,10,12,13,15,21;
   3:5,7,11,15,20,24;4:1,
   5,9,11,17,18,23;5:4,7,
   10,13,19,22;6:4,8,12,
   15,19,25;7:5,6,13,14,
   18,21,24;8:1,4,7,9,13,
   16,23;9:2,10,16,21,22,
   23,25;10:3,5,8,12,14,
   17,23,25;11:4,7,12,18,
   20,22;12:3,5,5,6,8,11,
   19,23;13:2,7,9;15:9;
   16:21;17:15,19,23;
   18:7,19;19:7,11,13,15,
   17,20,25;20:5,8,11,13,
   17,22;21:2,5,10;22:2,9,
   14,17,21,24;23:3,6,9,
   16,20,24;24:2,12,20;
   25:5,7,11,14,19,22,24;
   26:3,7,15,17,19,23,25;
   27:4,6,8,10,13,21,25;
   28:3,5,7,13,17,25;29:3,
   7,10,18;30:7,14,19
**critical (1)**
   11:10

**D**

**damages (3)**
   27:14,19,22
**date (17)**
   4:23;9:17,23,25;
   10:19,25;12:24,25;
   13:1,2;18:15;25:18,22,

25;26:8;27:6;30:16
**dates (3)**
  25:16,18;26:1
**day (8)**
  3:18;4:16;7:4;14:23;
  15:2;26:11;29:13;
  30:20
**days (3)**
  14:7,19;15:2
**dead (1)**
  9:19
**deadline (1)**
  10:16
**dealing (1)**
  12:11
**decide (5)**
  20:24;23:21;28:1,25;
  29:1
**decides (2)**
  22:9;29:3
**decision (2)**
  16:1,8
**defendant (4)**
  2:6;13:4;18:25;19:1
**denied (1)**
  29:16
**Department (4)**
  22:23,24;23:4,5
**deposed (1)**
  25:18
**deposition (10)**
  5:17;24:5,12,15,21,
  22;25:7,15,20,25
**depositions (1)**
  5:16
**depression (1)**
  27:15
**DEPUTY (2)**
  2:2;6:5
**described (1)**
  22:5
**descriptions (1)**
  24:3
**detail (1)**
  20:2
**developments (1)**
  19:2
**difficult (1)**
  12:11
**direct (1)**
  22:3
**directors (1)**
  20:3
**discharged (1)**
  4:7
**discretion (1)**
  13:12
**discuss (1)**
  10:1
**discussed (1)**
  17:10
**discussing (2)**
  18:19,20

**discussion (3)**
  18:15,17;29:15
**distinction (2)**
  23:22,25
**distress (5)**
  27:15,21,24;28:1,8
**District (2)**
  14:1;17:9
**docket (1)**
  18:10
**doctor's (1)**
  25:20
**document (1)**
  18:3
**documents (6)**
  10:14;14:22,25;15:1;
  18:2;29:14
**done (1)**
  9:4
**door (1)**
  20:3
**doors (1)**
  19:6
**down (1)**
  21:6
**Dr (3)**
  24:7,17;25:4
**draft (2)**
  14:13,14
**drafts (2)**
  14:16;15:1
**draw (1)**
  23:15
**drug (5)**
  15:15,24;20:3,4;
  30:13
**due (4)**
  3:19;9:7,8;29:14
**during (1)**
  21:16

**E**

**ECF (1)**
  14:1
**efforts (1)**
  14:17
**eight (4)**
  8:14,16;9:1;12:1
**either (3)**
  4:11;9:5,12
**elements (1)**
  17:9
**else (2)**
  2:24;23:10
**e-mail (3)**
  13:24;14:6,15
**e-mailed (2)**
  13:24;14:21
**e-mails (1)**
  14:25
**emotional (5)**
  27:15,21,24;28:1,8

**emphasize (1)**
  7:23
**employee (1)**
  28:11
**employer (4)**
  19:10;20:1,8,8
**enough (1)**
  30:15
**entitled (5)**
  3:1;27:16,17;28:15,
  21
**error (1)**
  28:19
**essentially (1)**
  19:3
**even (2)**
  12:21;18:3
**evening (1)**
  13:23
**Everybody (1)**
  5:22
**Evidence (11)**
  16:17,18;17:11,11;
  20:14,14,25;21:25;
  22:3,3,16
**exactly (1)**
  20:23
**example (1)**
  10:13
**examples (1)**
  20:2
**Excuse (1)**
  23:16
**executive (1)**
  24:9
**experience (1)**
  12:16
**expert (1)**
  28:22
**explain (1)**
  21:17
**explaining (2)**
  9:9;20:2
**explanation (1)**
  19:20

**F**

**fabrication (1)**
  13:17
**facilitate (1)**
  14:11
**fact (3)**
  2:22;7:12;20:5
**facts (3)**
  15:24;19:1;30:11
**fair (3)**
  2:25;3:1,2
**false (4)**
  13:15;15:18,21;
  17:13
**far (2)**
  2:16;18:16

**Federal (3)**
  16:17;17:3,10
**fees (2)**
  28:22,23
**fellow (1)**
  24:6
**FENSTERSTOCK (28)**
  2:4,5;13:5,11;15:13;
  16:25;18:8;22:20,22,
  25;24:7,13,24;25:6,9,
  13,16;26:9,13,16,20;
  27:2,7,11;28:18;29:2,
  5;30:18
**few (1)**
  23:2
**file (8)**
  4:25;10:14;11:6,8,8;
  12:5,6;14:22
**filed (8)**
  12:18;15:8;18:5,9,9;
  22:21;23:2,3
**final (2)**
  5:12;14:18
**find (1)**
  5:14
**finding (1)**
  23:13
**fine (5)**
  10:20;26:14;27:6,10;
  28:17
**fire (1)**
  12:15
**fired (5)**
  8:7;12:13,14;20:9;
  23:17
**first (4)**
  16:18;18:1,13;25:11
**five (1)**
  15:6
**flowery (2)**
  20:19,22
**follow (1)**
  17:5
**followed (3)**
  2:15;14:14;18:11
**forget (1)**
  21:11
**form (4)**
  21:13,14,16,19
**formulation (1)**
  20:4
**forward (1)**
  2:2
**forwarded (1)**
  29:13
**four (2)**
  14:6;15:2
**fraud (1)**
  17:4
**fraudulent (2)**
  15:22;16:6
**friendly (1)**
  24:15

**front (1)**
  19:12
**full (2)**
  14:2,4
**future (1)**
  12:20

**G**

**gave (4)**
  12:21;18:8;19:8;
  25:16
**given (4)**
  6:23;7:10;10:21;
  11:21
**goes (2)**
  16:7;29:11
**Good (3)**
  2:4,8;30:19
**goodies (1)**
  3:2
**granted (3)**
  17:19,20;26:8

**H**

**happened (1)**
  14:19
**happy (1)**
  7:18
**head (1)**
  27:23
**hear (13)**
  3:8;4:24;6:7,8;7:20;
  9:3;17:24;23:24;24:1;
  25:1,14,24;30:14
**heard (3)**
  29:18,19;30:15
**hears (1)**
  30:14
**hearsay (3)**
  21:20,25;22:3
**helpful (1)**
  12:8
**Honor (54)**
  2:4,8,19;3:9,13;4:4,
  15;5:3;7:3;9:9,20;
  10:21;11:2,15,21;
  12:17;13:5,11;15:3,6,
  13;16:20;17:13,21,25;
  18:4,8,11,11,13;22:5,
  20;23:12;24:1,13,25;
  25:6,13,23;26:2,21;
  27:7,12,20;28:10,18,
  24;29:2,5,8,16;30:4,5,
  18
**Honor's (5)**
  3:17;7:4;8:25;9:6;
  10:22
**hope (1)**
  13:21

## I

**idea (1)**
8:11
**II (1)**
15:25
**III (3)**
15:25;16:7,14
**important (2)**
11:10;29:11
**information (11)**
3:13;4:16;7:11;8:12;
14:1;15:19;16:4,7,22;
18:4;19:3
**injuries (1)**
27:16
**instance (3)**
10:6,12;18:5
**instructions (6)**
9:4;14:13;29:21,24;
30:2,3
**intend (2)**
5:7;6:12
**interest (1)**
28:21
**interpret (1)**
7:2
**interrupt (2)**
21:16,24
**into (1)**
17:23
**investors (1)**
19:4
**involved (2)**
8:18;27:16
**issued (1)**
15:14
**issues (1)**
15:13
**items (4)**
9:1;11:10,12;12:1

## J

**joint (5)**
11:16;14:12;15:15;
16:6;24:11
**jointly (1)**
29:21
**judge (2)**
10:18;15:25
**judgment (4)**
10:6,9;15:23;24:8
**Julio (1)**
2:8
**juror (1)**
8:17
**jurors (2)**
8:14,16
**jury (26)**
9:4;11:17,24;14:13;
16:17;18:20,21;19:15;

20:13,22,24;21:15,17,
22;22:9;23:21;25:1;
27:25;28:14,25;29:3,
21,24,24,25;30:14

## K

**Karas (1)**
16:1
**key (2)**
24:8;25:1
**knowledge (2)**
15:5;17:6
**known (1)**
22:12
**knows (1)**
23:10

## L

**Labor (4)**
22:23,24;23:4,5
**lack (1)**
18:17
**last (1)**
7:20
**later (1)**
23:2
**law (4)**
7:1;17:3;22:7;27:20
**laws (1)**
28:5
**lawyer (1)**
2:25
**lawyers (1)**
13:18
**learned (1)**
18:21
**left (1)**
13:19
**letter (3)**
9:8,14;12:18
**letters (2)**
9:10;11:6
**liberties (1)**
2:24
**lift (1)**
6:5
**limine (7)**
15:6;16:18;18:1,5,7;
21:4;27:11
**list (18)**
2:16,17,18;5:11,13;
6:3,8,10,11;7:6;8:25;
9:1,2,3;11:11;12:1;
18:2;27:19
**listen (1)**
29:18
**listening (1)**
24:3
**litigant (1)**
12:12
**litigants (1)**

13:13
**litigation (1)**
28:22
**lives (1)**
26:20
**long (4)**
11:11;14:8;18:2;
26:18
**loss (4)**
5:3,5;27:14,14
**Lukacsko (1)**
6:11

## M

**may (16)**
3:10,23,25;4:22;
5:16;11:9;12:9;15:16;
16:6;20:25;21:18,20,
20;25:21,23;29:8
**Maybe (1)**
25:14
**mean (6)**
2:23;5:20;10:9;12:8;
15:12;19:13
**means (1)**
17:20
**meet (1)**
20:4
**memo (5)**
15:17;17:3;20:1;
23:17;25:4
**memorandum (2)**
16:19,19
**mention (3)**
16:14,15,15
**merit (2)**
18:17,18
**message (3)**
13:20,20,25
**microphone (2)**
6:5;17:23
**minute (1)**
3:15
**misleading (1)**
19:3
**moment (1)**
23:16
**Monday (4)**
14:2,4,8;29:15
**months (1)**
10:15
**more (3)**
2:23;29:19;30:5
**morning (12)**
2:4,8;8:2;11:23;14:2,
4,9,14;26:16,17;27:6;
29:15
**most (2)**
11:10,10
**motion (9)**
10:6,9;15:9;16:18;
18:5,7;22:6;24:8;27:12

**motions (8)**
4:24;11:6;15:6;
17:19,20,20;18:1;21:4
**mouth (1)**
6:6
**much (3)**
7:2;10:14;28:15
**mutual (1)**
14:17
**myself (1)**
30:3

## N

**name (1)**
2:5
**names (3)**
4:1,14;6:24
**narrative (4)**
21:13,14,16,19
**need (3)**
5:11;10:14;29:19
**New (3)**
2:5;13:18;26:25
**next (8)**
11:5,8,23;14:14;
16:21;23:25;24:2,4
**Nice (1)**
30:19
**night (2)**
14:23,24
**nobody (1)**
5:25
**nobody's (1)**
3:21
**none (1)**
28:8
**noticed (1)**
13:17
**notified (2)**
22:18,19
**now's (1)**
9:3
**number (10)**
3:23;4:1,14;5:11,12;
12:21;18:3,24;21:4,12

## O

**o0o (1)**
30:21
**object (1)**
21:21
**objection (1)**
21:17
**objectionable (2)**
21:19,21
**objections (1)**
30:1
**objective (1)**
17:8
**obligation (1)**
21:23

**obviously (1)**
16:15
**October (10)**
24:18;25:16,17,17;
26:3,4,4,5,9;27:3
**off (1)**
27:23
**office (2)**
27:2,4
**omission (2)**
15:11;16:4
**omissions (2)**
16:11,12
**omitted (3)**
15:24;16:7;18:25
**one (20)**
2:22;3:18;4:11;7:15;
9:12;12:3,3;15:9,13,
20;18:3,24;19:8;23:14,
25;24:3,4;25:18;26:10;
27:11
**only (17)**
3:14,17;7:8,11,15,
23;9:1,11;13:16;15:21;
22:3,12;23:9;27:16,17;
29:3;30:8
**operations (1)**
24:10
**opportunity (3)**
17:17,22;30:1
**opposed (1)**
30:12
**opposing (9)**
6:2,10,23;7:10;
21:15;22:11;23:7;
29:12,16
**opposition (1)**
12:18
**order (22)**
3:17;4:16;7:4,5,12,
13;9:6;10:22,24;11:13;
13:16,21;14:5,10,12,
19,23,23;15:2;17:1;
24:4;29:13
**orders (1)**
9:11
**out (4)**
5:15;16:19;24:19;
25:10
**outside (2)**
20:19;26:20
**over (5)**
4:19,19;14:3;19:20;
30:1
**oversight (1)**
24:10
**overture (1)**
18:22
**own (2)**
8:9;29:23

## P

**Pain (3)**
  28:2,3,7
**papers (1)**
  30:15
**part (1)**
  7:20
**particular (2)**
  18:22;24:21
**past (2)**
  10:8;12:19
**pay (10)**
  27:17,17;28:3,9,10,
  14,14,15,21;29:4
**peers (1)**
  23:14
**people (2)**
  4:2;12:14
**PEREZ (135)**
  2:8,9,11,14,19;3:4,6,
  9,13,17,23,25;4:4,8,10,
  15,22;5:3,5,9,11,18,21;
  6:2,7,10,14,17,23;7:3,
  10,20,23,25;8:3,6,8,11,
  15,22,24;9:6,14,20,22,
  24;10:2,5,8,12,17,21;
  11:2,9,15,19,21;12:1,4,
  7,10,17,21,23;13:1,8,
  10,15,20;15:10,16;
  16:4,13,22;17:1,15,17,
  21,25;18:13,23;19:9,
  12,14,16,19,23;20:1,7,
  10,12,16,21;21:1,3,7,
  12;22:1,5,11,15;23:1,5,
  7,12,19,22;24:1;25:19,
  21,23;26:2,6,11,14,17,
  18,22,24;27:5,9,13,19,
  23;28:2,4,6,10,16,21;
  29:8,11,18;30:4,11
**Perez's (3)**
  15:4;16:9;25:4
**period (1)**
  9:18
**permissible (1)**
  17:20
**permitting (1)**
  24:4
**person (2)**
  7:8;22:8
**Peter (1)**
  6:11
**Pharmaceuticals (1)**
  2:6
**Phase (4)**
  15:25,25;16:7,14
**PhD (2)**
  7:24;24:10
**Philadelphia (1)**
  26:21
**pick (2)**
  8:13,16
**picture (1)**
  19:2
**Pink (1)**
  10:4
**place (1)**
  25:12
**Plains (5)**
  9:21;10:3,4,4;26:24
**plaintiff (2)**
  2:9;16:2
**please (1)**
  2:2
**plenty (1)**
  5:14
**pm (1)**
  13:19
**podium (1)**
  2:3
**point (3)**
  6:17,19;14:17
**position (2)**
  17:7;28:11
**positive (1)**
  19:5
**postmarked (2)**
  3:19;10:22
**potential (1)**
  5:1
**preceded (1)**
  22:22
**preclude (5)**
  15:10;16:18,21;
  21:12;27:13
**precluded (1)**
  16:4
**prejudicial (1)**
  16:16
**preparation (1)**
  11:3
**prepare (1)**
  15:1
**prepared (1)**
  28:14
**prescribes (1)**
  18:12
**present (2)**
  19:7;20:14
**presentation (1)**
  23:8
**presented (3)**
  19:2,5;22:16
**preserve (1)**
  24:5
**president/chief (1)**
  24:9
**press (19)**
  15:14,15,16,17,21;
  16:6,10;19:4,7,8,11,17,
  18,21;20:15,17,18,23;
  25:3
**pretrial (11)**
  3:18;4:24;8:25;9:7;
  11:2;13:21;14:5,10,22;
  18:15,15
**pretty (2)**
  17:13,14
**prevail (2)**
  28:20,21
**previous (3)**
  12:17;24:25;29:16
**prior (3)**
  11:17;29:13,13
**pro (7)**
  2:9,11,22,23;10:13;
  12:12;13:13
**problem (4)**
  6:23;10:20;18:24;
  21:18
**problems (2)**
  6:22;7:17
**proceed (1)**
  16:11
**proceeding (1)**
  16:5
**process (1)**
  25:3
**produce (1)**
  24:15
**Progenics (4)**
  2:6;15:14;17:3;24:4
**progress (2)**
  15:15,24
**project (1)**
  24:10
**proper (1)**
  21:20
**prove (1)**
  16:23
**provided (1)**
  28:23
**providing (1)**
  16:3
**psychological (1)**
  27:15
**pursuant (2)**
  14:22;15:1
**put (4)**
  10:11;11:5,6;25:2
**putting (1)**
  14:16

**Q**

**qualifications (1)**
  23:14
**quote (1)**
  14:15

**R**

**reach (1)**
  14:17
**read (5)**
  11:7,16;18:1;29:25;
  30:15
**reality (1)**
  19:5
**reason (2)**
  21:7,21
**reasonable (9)**
  10:15;16:23;17:2;
  22:6,8,9,12;23:13;
  28:22
**reasonably (1)**
  16:5
**reasons (3)**
  12:14,21;15:20
**receipt (1)**
  13:24
**receipts (1)**
  14:24
**receive (1)**
  7:5
**received (11)**
  3:14,17;4:15;7:3;
  13:16,21;14:5,25;15:3;
  18:2;29:12
**reconsideration (2)**
  16:1,8
**record (6)**
  13:11,15;14:20;15:4;
  18:10;28:19
**referencing (1)**
  16:22
**referring (3)**
  15:10;18:3;27:13
**reinstatement (3)**
  28:4,11,23
**relative (1)**
  15:24
**release (19)**
  15:14,15,17,18,21;
  16:6,11;19:4,7,8,11,17,
  18,21;20:15,17,18,24;
  25:3
**remember (1)**
  24:11
**remind (1)**
  30:5
**reply (2)**
  17:25;18:16
**reporting (1)**
  15:11
**represent (1)**
  2:6
**representations (1)**
  16:9
**represented (1)**
  15:3
**reputation (2)**
  27:14,15
**request (4)**
  4:22,23;21:9;29:17
**requested (2)**
  4:16;9:14
**requesting (1)**
  12:18
**requires (2)**
  17:5,8
**respect (3)**
  13:13;15:4,15
**respond (2)**
  17:18,22
**response (1)**
  14:11
**result (1)**
  15:18
**retaliation (4)**
  15:11;16:3;17:1;
  30:12
**review (1)**
  15:7
**right (37)**
  2:7;3:15,20;4:13,20,
  24;5:13,14,23,24;6:20;
  8:4,17;10:4,9;11:13,13,
  18;12:23;13:2;15:9;
  16:21;20:25;21:2,15,
  18,21,22;22:2,24,25;
  23:20,21,25;27:8;
  28:17;30:19
**rosy (1)**
  19:2
**rule (4)**
  7:1;16:17;17:11;
  18:11
**rules (3)**
  2:12;7:6,14

**S**

**same (1)**
  4:19
**Sarbanes-Oxley (9)**
  16:2,24;17:1,5;
  23:12;27:18,20;28:7,
  20
**saying (7)**
  14:15;18:5,6,25;
  20:3;21:18;24:2
**schedule (1)**
  10:7
**Schneider (3)**
  24:5,7,17
**se (7)**
  2:9,11,23,23;10:13;
  12:12;13:13
**Second (2)**
  13:12;24:17
**second-guess (1)**
  24:25
**Section (2)**
  16:25;28:20
**seeing (1)**
  30:19
**send (1)**
  14:12
**sent (4)**
  14:6,14;23:17;29:14
**September (11)**
  3:18;9:1,7,8;10:22;
  13:16,19,19,23;14:6,18
**serve (1)**
  14:16
**service (1)**

18:10
**set (9)**
9:4,17,17,23;10:7,19,
25;12:24;29:21
**several (1)**
16:8
**Sharkey (1)**
17:9
**sheet (1)**
18:10
**show (3)**
17:2,12;20:13
**side (8)**
2:25;4:12,24;5:7;
6:12;8:16,20;25:2
**sides (1)**
3:1
**similar (1)**
23:14
**simple (3)**
7:1;17:13;30:10
**single (1)**
18:11
**situation (1)**
24:6
**somebody (4)**
17:7;23:10,13,14
**sometimes (1)**
15:2
**soon (3)**
13:17;24:16,16
**sorry (6)**
6:7,17;7:20;12:7;
17:21;24:1
**sorts (1)**
16:14
**sound (1)**
12:9
**Southern (2)**
14:1;17:9
**speak (2)**
3:7;17:23
**speaks (1)**
19:17
**specifically (2)**
16:1;28:23
**specifics (1)**
18:16
**spelled (1)**
16:19
**stage (1)**
10:8
**stand (1)**
5:25
**standard (1)**
13:13
**started (1)**
30:12
**starting (1)**
14:17
**state (1)**
2:3
**stated (3)**

14:2;29:12,15
**statement (3)**
11:16,23;14:13
**statements (3)**
13:14;16:10,10
**status (1)**
10:13
**statute (1)**
28:24
**stay (3)**
10:4;13:9,9
**stockholders (1)**
15:22
**story (2)**
21:24,24
**straightforward (2)**
17:14;21:25
**stress (1)**
8:24
**stuff (1)**
20:19
**subjective (1)**
17:8
**submissions (5)**
3:18;8:25;9:8;11:3;
18:15
**submit (3)**
11:4,4,9
**submitted (3)**
9:4;14:11;24:7
**subsequently (1)**
15:19
**substantive (4)**
13:20,25;14:8;25:2
**suffering (3)**
28:2,3,8
**suggested (1)**
10:15
**summary (4)**
10:6,8;15:23;24:8
**Sunday (1)**
14:6
**supporting (1)**
16:19
**supposed (1)**
10:24
**sure (1)**
14:5
**system (1)**
14:1

**T**

**talk (1)**
7:18
**talked (5)**
14:9,10;25:3,3,4
**telephone (2)**
14:3,4
**telling (6)**
4:19;5:23;7:7;10:18;
24;21:24
**tells (1)**

12:16
**terminated (5)**
15:11,18,20;16:3;
23:1
**testify (13)**
2:17;3:21;4:2,13;
6:21,25;7:8,8,15,16;
21:13;23:9,11
**testifying (1)**
21:12
**testimony (2)**
22:15;24:6
**tests (1)**
15:25
**theory (4)**
15:10;16:3,5;23:16
**therefore (2)**
15:21;16:11
**thought (1)**
25:13
**three (2)**
8:20,20
**throughout (1)**
15:20
**till (2)**
9:19;14:9
**times (1)**
16:9
**tired (2)**
4:19;24:3
**today (2)**
15:7;18:13
**today's (1)**
18:14
**together (3)**
14:16;29:20,23
**told (4)**
4:2;6:20;9:22;14:11
**Tom (1)**
2:5
**top (1)**
27:23
**totally (1)**
15:18
**treat (1)**
2:24
**trial (17)**
3:1,2;4:13;5:19,22;
7:22;8:10;9:17;10:10,
10;11:24;12:24,25;
13:1;24:5,16;30:17
**trials (1)**
16:7
**tried (2)**
9:22;15:22
**try (3)**
7:2;9:18;10:19
**trying (4)**
12:8;21:23;24:20,21
**Tuesday (4)**
11:5,8,23;14:18
**two (4)**
9:13;10:15;14:19;

21:12

**U**

**unavailable (2)**
24:20;25:10
**under (7)**
16:17,24,25;17:4,9;
28:7,19
**Unless (2)**
3:21;5:24
**unusual (1)**
24:14
**up (9)**
3:7;4:10;6:5;13:6,7;
14:15;15:4;20:24;
23:20
**use (2)**
17:11;30:12

**V**

**various (1)**
22:15
**venture (1)**
24:11
**version (1)**
14:18
**vice (1)**
24:9
**violated (1)**
17:3
**voice (1)**
13:25

**W**

**Wait (2)**
3:15;6:4
**wants (1)**
25:19
**way (1)**
12:9
**week (1)**
26:11
**weekend (1)**
14:3
**weeks (1)**
23:2
**Welcome (1)**
2:4
**What's (2)**
5:4;24:6
**White (3)**
9:21;10:3;26:24
**whole (1)**
20:5
**who's (1)**
7:8
**win (1)**
17:2
**without (2)**
11:2,3

**witness (5)**
24:9,15;25:1,5;28:22
**witnesses (30)**
2:16,17,18,21;3:5,12,
16,21;4:3,12,18,20,21,
25;5:1,1,15,23,24;6:3,
9,20,21,24;7:7,14;
22:15,17,19;23:11
**words (2)**
15:22,25
**worked (1)**
14:23
**writing (1)**
11:5
**wrote (4)**
9:8;15:17;20:1;
24:18
**Wyeth (4)**
15:15;24:10,11;25:2

**Y**

**York (2)**
2:5;26:25

**1**

**10:00 (3)**
26:16,17;27:6
**10th (2)**
25:17;26:3
**12:40 (1)**
13:19
**14th (6)**
25:17;26:4,9,11,14;
27:3
**16th (4)**
25:17;26:4,5,9
**19 (1)**
13:19

**2**

**2008 (4)**
16:23;17:3;22:25;
23:2
**2010 (2)**
22:21,22
**2013 (1)**
24:8
**20th (2)**
13:19,23
**21 (1)**
14:6
**22nd (3)**
14:4,8;16:6
**23rd (2)**
10:22;14:18
**24th (3)**
9:8;14:21,24
**25th (4)**
3:18;9:1,7;13:16
**28th (1)**

| | | | | |
|---|---|---|---|---|
| 24:18 | | | | |
| **4** | | | | |
| **4 (2)**<br>  16:23;17:3<br>**401 (2)**<br>  16:17;17:11<br>**4th (1)**<br>  17:12 | | | | |
| **5** | | | | |
| **5 (1)**<br>  23:2 | | | | |
| **7** | | | | |
| **7th (2)**<br>  25:16;26:3 | | | | |
| **8** | | | | |
| **8:18 (1)**<br>  13:23<br>**806 (2)**<br>  16:25;28:20 | | | | |
| **9** | | | | |
| **9:00 (1)**<br>  14:9<br>**9:19 (1)**<br>  14:24<br>**9:26 (1)**<br>  14:9 | | | | |