UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

JULIO PEREZ,                                    Case No.: 1:10-CV-08278 (LAP)

                        Plaintiff,

        - against -                             **AFFIRMATION OF**
                                                **CHRISTOPHER P. KEENAN**
PROGENICS PHARMACEUTICALS, INC.,                **IN SUPPORT OF PETITION**
                                                **FOR CHARGING LIEN**
                        Defendants,

-----------------------------------------------------------x

CHRISTOPHER P. KEENAN, ESQ. affirms the following under penalty of perjury:

1.      I am an attorney duly admitted to practice before this Court and a partner of the law

firm of WESTERMANN, SHEEHY, KEENAN, SAMAAN & AYDELOTT, LLP, former attorneys

of record for plaintiff JULIO PEREZ ("Perez").

2.      I respectfully submit this Affirmation in support of our motion, pursuant to New York

Judiciary Law § 475, fixing and enforcing a charging lien on behalf of WESTERMANN, SHEEHY,

KEENAN, SAMAAN & AYDELOTT, LLP on the judgment obtained by the plaintiff in this matter,

and for such other and further relief as this Court may deem just and proper.

3.      My firm began representing the plaintiff in March, 2009 when this matter was still

pending in the United States Department of Labor ("DOL"). Plaintiff signed a retainer agreement

which set forth, in pertinent part, as follows:

> "client agrees to pay thirty three and one-third percent  (33
> 1/3%) of the total gross amount recovered by suit, settlement or
> otherwise including any amounts recovered for attorney's fees
> and costs, or one hundred percent (100%) of any amounts
> recovered for attorney's fees and costs, whichever is greater. In
> the event that this matter is resolved by remedying the
> employment discrimination and preserving the employer-
> employee relationship between the client and PROGENICS

PHARMACEUTICALS, then client agrees to pay the Attorney $350.00 per hour for all professional services rendered." (Exhibit A).

4.      My firm filed a Notice of Appearance as Dr. Perez' counsel in this matter with the United States Department of Labor in April, 2009 (Exhibit B) after his prior attorney withdrew.

5.      After being retained by plaintiff, we engaged in discovery, including interrogatories, document production and depositions, while the matter remained pending before the DOL.

6.      In November, 2010, we removed the action from the DOL and initiated suit in this Court through the filing of a Summons and Complaint on behalf of Julio Perez on November 2, 2010.  The Complaint asserted that defendant wrongfully retaliated against plaintiff for protected acts in violation of the Sarbanes-Oxley Act of 2002 (the "Act"), 18 U.S.C. § 1514A. An Amended Complaint was also filed in November, 2010.  (Exhibit C).

7.      Thereafter, we conducted extensive further discovery on plaintiff's behalf. This extensive discovery conducted on  Perez's behalf included numerous additional depositions of defendant, Progenics Pharmaceuticals, Inc. ("Progenics"),  as well as non-party discovery from Progenics' joint venture partner on the Relistor drug, Wyeth Pharmaceuticals Division of Wyeth, Inc. ("Wyeth").  It also included obtaining, analyzing and exchanging tens of thousands of pages of documentary evidence, including computer data, financial documentation, telephone records, pharmaceutical information, business documents, policies and procedures, etc.  We prepared and exchanged extensive demands for and responses to interrogatories.  We engaged in formal motion practice and numerous court conferences to propel discovery in this matter forward.  Discovery was completed before our withdrawal.  Through our efforts during discovery, we were able to ascertain and analyze crucial evidence supporting Dr.  Perez' claims and refuting Progenics' defenses.  This

2

evidence was utilized by plaintiff during the trial of this action, which ultimately led to a substantial judgment in his favor. For instance, our efforts in both written discovery and depositions of current and former Progenics employees and officers, as well as non-party discovery from Wyeth proved that Progenics carefully orchestrated a plan to terminate Julio Perez in retaliation for his filing a protected complaint under the Sarbanes-Oxley Act. As a result, defendant was unable to argue successfully that the termination of Dr. Perez was lawful.

8.       On February 10, 2012, my firm made a motion to withdraw as counsel for Dr. Perez due to irreconcilable problems which rendered it unreasonably difficult for my firm to carry out its representation effectively and made it necessary to cease representing Dr. Perez. Attempts were made to resolve these problems but were unsuccessful.

9.       On February 17, 2012, Hon. George A. Yanthis granted our motion to withdraw as counsel. (Exhibit D).

10.      During my firm's almost three (3) years representing the plaintiff, we invested substantial time and incurred expenses in the prosecution of this action, including documented expenses of $14,588.02 and 439.3 hours of attorney time dedicated to this action. (Annexed hereto as Exhibit E, please find a copy of my firm's attorney time entries showing the total number of hours spent and a list of disbursements paid by my firm[1]).

11.      On or about July 2, 2012, my firm moved pursuant to New York Judiciary Law § 475, to fix or attach a charging lien on any judgment or settlement obtained by the plaintiff in this matter, and for such other and further relief as this Court may deem just and proper.

---

[1]

Exhibit E has been redacted to preserve and maintain attorney-client and work-product privileges.

3

12.     On December 7, 2012, Hon. George A. Yanthis denied our motion for a charging lien as premature, as plaintiff had not yet prevailed on his claims against defendants. As such, our motion was denied with leave to renew upon a recovery by plaintiff in this matter. (Exhibit F).

13.     On July 31, 2015, following a trial before the Honorable Loretta A. Preska, a jury awarded a verdict in favor of the plaintiff, Julio Perez, in the amount of $1,662,951.00 for back pay. Plaintiff filed a Judgment for the same, entered on August 13, 2015. (Exhibit G).. Shortly thereafter, the defendant moved to overturn the judgment and for a new trial. Plaintiff moved for pre-judgment interest and reinstatement of his position or, in the alternative, for front pay.

14.     On or about September 1, 2015, my firm moved for attorneys fees against defendant pursuant to the Sarbanes-Oxley Act or, in the alternative, for leave to renew our application for a charging lien.

15.     On August 30, 2016, Hon. Loretta A. Preska issued an Opinion on the combined motions. (Exhibit H). Judge Preska denied defendant's motion for a new trial and awarded plaintiff pre-judgment interest on his back pay award of $1,662,951.00, as well as front pay, in the amount of $2,706,585.00. (Exhibit H). Judge Preska ordered plaintiff and defendant to submit their calculations regarding the pre-judgment interest owed to plaintiff.

16.     With regard to my firm's motion for attorney's fees, Judge Preska determined that my firm did not have standing to seek attorney's fees and costs directly from defendant pursuant to the Sarbanes-Oxley Act, even though plaintiff is entitled to the same. (Exhibit H). That said, Judge Preska specifically set forth, "Here, there can be no dispute that Westermann appeared on behalf of Plaintiff and served as Plaintiff's counsel from November 2, 2010 to February 17, 2012. It is therefore entitled to a lien for the value of its services." Accordingly, Judge Preska granted my firm

4

leave to renew our application for a charging lien. (Exhibit H).  Judge Preska otherwise noted that "the Sarbanes-Oxley Act clearly confers upon plaintiff the right to move for attorneys fees in this action".   As such, Judge Preska granted plaintiff time to move for attorney's fees against the defendant after the entry of my firm's charging lien.

17.     On or about September 8, 2016, defendant submitted their calculation of the pre-judgment interest to be awarded to Dr. Perez.  (Exhibit I[2]).  Defendant calculated pre-judgment interest to be $640,052.52.  (Exhibit I).  Even accepting defendant's calculation for purposes of this motion, plaintiff's total judgment in this matter will be at least $1,662,951.00 (back pay) + $640,052.52 (prejudgment interest) + $2,706,585.00 (front pay) for a total of $5,009,588.52.

18.     As the instant motion is being filed by Judge Preska's extended deadline of September 16, 2016, it is timely.

## ARGUMENT

### I.     WE ARE ENTITLED TO A CHARGING LIEN FOR THE WORK PERFORMED IN THIS MATTER

19.     New York Judiciary Law § 475 provides, in pertinent part:

> From the commencement of an action, special or other proceeding in any court, *or before any state, municipal or federal department*...the attorney who appears for a party has a lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, report, determination, decision, judgment, or final order in his client's favor and the proceeds thereof...and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The court upon the petition of the client or attorney may determine and enforce the lien.

---

[2]

Plaintiff submitted a higher figure for prejudgment interest.

Courts have held that an attorney who appears for a party has a lien upon their client's cause of action which attaches to any determination in their client's favor, cannot be adversely affected by any settlement between the parties, and may be enforced simply by making a petition to the court in the proceeding where the attorney appeared. *Haser v. Haser*, 271 A.D.2d 253 (1st Dep't 2000).

20.     It is well settled that New York Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New York. *Intar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2nd Cir. 1998); *see also Antonmarchi v. Consolidated Edison Co. of New York*, 678 F.Supp 2d 235 (S.D.N.Y. 2010) ("court will exercise its supplemental jurisdiction authority, pursuant to 28 U.S.C. § 1367(a) and determine whether to fix a charging lien. The lien created by NYJL §475 is enforceable in federal courts in accordance with its interpretation by New York Courts"); *Markakis v. S.S. Mparmpa Christos*, 267 F.2d 926, 927 (2nd Cir.1959) (Section 475 "creates an equitable right and remedy cognizable in the federal courts"). Moreover, the Second Circuit has "long recognized that the lien created by section 475 ... is enforceable in federal courts in accordance with its interpretation by New York courts." *In re Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir.1991); *see also Intar-Tass Russian News Agency, supra.*

21.     Courts have held that the New York statutory charging lien is a device to protect counsel against the "knavery of his client" and is "predicated on the idea that the attorney has by his skill and effort obtained the judgment and hence should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures". *Butler v. Fitzgerald & Potter v. Sequa Corp.*, 350 F.3d 171 (2nd Cir. 2001). The statute is "remedial in character and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action". *Figueroa v. City of New York*, No. 05 Civ. 9594(JGK) (S.D.N.Y. 2011) (internal citations omitted).

22.     In interpreting the amount of a charging lien, where the amount has been fixed by agreement, execution is generally appropriate on the judgment for the amount agreed to by the parties, but must be "fair".  *Id.*  In determining fairness, a court will look to "the terms of the percentage agreement, the nature of the litigation, difficulty of the case, time spent, amount of money involved, results achieved, and amounts customarily charged for similar services in the same locality. *Id.*

23.     In order to be entitled to the benefits of New York Judiciary Law § 475, an attorney asserting a right to a charging lien must have been the counsel of record at one point in the proceedings. *Intar-Tass Russian News Agency, supra; see also Antonmarchi, supra*.  In addition, the attorney seeking to assert a charging lien must not have withdrawn or been discharged *for cause* which requires a showing by the client that the attorney's conduct "constituted a failure to properly represent his interests".  *Id.*

24.     This Court has already determined that our firm is entitled to a charging lien for the value of our services as plaintiff's counsel.  Judge Preska specifically noted that there is no dispute that our firm, Westermann, Sheehy, Keenan, Samaan, & Aydelott, LLP,  served as the attorneys of record for the plaintiff in this action.

25.     New York Judiciary Law § 475 specifies that a charging lien is applicable "from the commencement of an action, special or other proceeding in any court, *or before any state, municipal or federal department*".  As such, the plain text of the statute confers a charging lien to the handling attorney/firm both for those matters handled in Court, as well as before an administrative agency, such as the Department of Labor (DOL).  In this matter, our firm represented plaintiff from March of 2009 through November 2, 2010, while the matter was still pending in the DOL.  As part of our

representation of Dr. Perez, our firm engaged in significant litigation and discovery prior to the filing of this action in federal court. The discovery which occurred while this matter was still pending before the DOL had a substantial impact on the ultimate outcome, and ultimate recovery, awarded to Julio Perez. As such, it is clear that my firm is entitled to a charging lien for the value of our services in representing Dr. Perez, including March of 2009 through November of 2010, while this matter was pending before the DOL.

26.      Thereafter, we removed the case to federal court, and on November 2, 2010, our firm initiated the instant action on behalf of the plaintiff through the service and filing of a Summons and Complaint. In total, our firm represented the interests of plaintiff, Julio Perez, for approximately three years, which included extensive investigation and research, analyses, motions, depositions, interviews, preparation meetings with client, and extremely extensive written discovery interrogatories and document productions with Progenics and its non-party, joint venturer on the Relistor Project, Wyeth.

27.      During our three years of representation, we conducted extensive discovery on plaintiff's behalf. This extensive discovery included numerous depositions of defendant, Progenics, and tens of thousands of documents from non-party Wyeth, while this matter was pending before the DOL as well as after this action was removed to federal court.   We obtained, analyzed and exchanged tens of thousands of pages of documentary evidence relevant to this action, including computer data, financial documentation, telephone records, pharmaceutical information, business documents, policies and procedures, etc. We prepared and exchanged extensive discovery demands, including demands for and responses to interrogatories. We engaged in formal motion practice and appeared for numerous court conferences in an effort to propel discovery in this matter forward and

obtain a resolution for Dr. Perez.

28.     Depositions of Progenics included current and former employees and officers. We deposed its chief executive officer, general counsel, senior vice president, project manager of Relistor, chemists, scientists and chairman of the board/audit committee.

29.     Through our efforts during discovery, we were able to ascertain crucial evidence utilized by plaintiff during the trial of this action, which ultimately won him a substantial judgment in his favor. We discovered and analyzed facts and evidence that proved all the necessary elements of plaintiff's claim of retaliatory discharge under the Sarbanes-Oxley Act. Through our skill and efforts, we also ascertained and developed facts which completely refuted Progenics defenses by showing, *inter alia*, that Progenics alleged reasons for terminating Dr. Perez were false and pretextual.

30.     We invested hundreds of hours of attorney time and incurred substantial expenses in the prosecution of this action, including documented expenses of $14,471.44. We expended approximately 440 hours of attorney time due to the complexity of this matter. As such, it is beyond cavil that our firm served as plaintiff's counsel of record, obtained and analyzed a vast amount of documentation and information to support plaintiff's claims, and, through our efforts and representation proved his Sarbanes-Oxley claim and moved this complex litigation forward, despite a vigorous and aggressive defense.

31.     Where the amount for attorneys fees has been fixed by agreement, execution of the same pursuant to a charging lien is generally appropriate on the judgment for the amount agreed to by the parties, as long as it is "fair". *Figueroa, supra.* Pursuant to the retainer agreement executed by plaintiff, "client agrees to pay thirty-three and one-third percent (33 1/3%) of the total gross amount recovered by suit, settlement or otherwise including any amounts recovered for attorney's

fees and costs, or one hundred percent (100%) of any amounts recovered for attorney's fees and costs, whichever is greater." (Exhibit A). As this Court is well aware, thirty-three and one-third percent is the standard contingency fee for plaintiff's counsel in matters such as this. Thus, it is exactly "the amount customarily charged for similar services in the same locality". Moreover, as set forth above, our firm has expended substantial time, energy and costs in the prosecution of this action on behalf of plaintiff. Accordingly, it is respectfully submitted that my firm is entitled to attorney's fees in the amount of thirty-three and one-third percent of the total gross amount recovered by plaintiff [\$1,662,951.00 (back pay) + \$640,052.52 (prejudgment interest) + \$2,706,585.00 (front pay) for a total of \$5,009,588.52], plus reimbursement for documented disbursements in the amount of \$14,471.44, as per the written retainer agreement executed by plaintiff.

32.     That said, we are mindful of the fact that we withdrew as counsel for plaintiff prior to the summary judgment motion and trial of this action. Accordingly, rather than seeking the entire contingency fee agreed upon by Dr. Perez (33.3% of the gross amount recovered), we believe that a fee of 20% of the gross amount awarded, plus reimbursement for documented disbursements in the amount of \$14,471.44, is fair and reasonable to compensate for the substantial amount of work and value of professional services my firm has provided in this matter.     Accordingly, it is respectfully submitted that this Court should grant a charging lien for my firm in the amount of 20% of the gross amount recovered, or \$1,001,917.00.

## II.     OUR CHARGING LIEN WILL CAUSE NO PREJUDICE TO PLAINTIFF AS PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES FROM DEFENDANTS

33.     The Sarbanes-Oxley Act, 18 U.S.C.A. § 1514A(C) provides, in pertinent part:

> (1)     In general.--An employee prevailing in any action under [this section] shall be entitled to all relief necessary to make the employee whole.

(2)     Relief for any action shall include...
   C)     compensation for any special damages sustained as a
          result of the discrimination, ***including litigation costs***,
          expert witness fees, ***and reasonable attorney fees***.
          (emphasis supplied).

34.     In determining the amount of attorneys fees to which a prevailing plaintiff is entitled, the Second Circuit relies upon a "presumptively reasonable fee" standard, which requires the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that the courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Association,* 522 F.3d. 182 (2nd Cir. 2007). This standard is an adaption of the traditional "lodestar" method, but is the product of a *reasonable* hourly rate and the reasonable number of hours required by the case, taking into consideration all relevant factors on a case-by-case basis to determine what is *reasonable*. *Id. Congregation Rabbinical College of Tartikov v. Village of Pomona,* 2016 WL 3030253 (S.D.N.Y. 2016). In *Millea v. Metro-North R. Co*, the Second Circuit noted that lodestar, although not always conclusive, should be used as a starting point in determining a reasonable fee, but a district court may adjust the loadstar to account for factors which may properly be considered in determining a reasonable fee. *Millea v. Metro-North R. Co,* 658 F.3d 154 (2nd Cir 2011). In *Study Logic, LLC v. Clear Net Plus, Inc,* the Eastern District noted that the vast majority of courts in the 2nd Circuit rely upon the *Arbor Hill* method to determine a "reasonable" fee, noting that courts have broad discretion in determining the "reasonable" rate, but should still consider the prevailing hourly rates of the district where they sit, and may consider other case specific variables such as the complexity of the case and the attorney's level of expertise". 2012 WL 4329349 (EDNY 2012).

35.     Pursuant to this standard, in determining what rate a paying client would be willing

11

to pay, the district court should consider, *inter alia*, the *Johnson* factors; that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively; and, that such a client may negotiate with his or her attorneys to obtain the reputational benefits. *Arbor Hill, suora., Congregation Rabbinical, supra.* Such factors include:

> 1) the time and labor required
> 2) the novelty and difficulty of the questions of law;
> 3) the level of skill required to perform the legal service properly;
> 4) the preclusion of employment by the attorney due to acceptance of the case;
> 5) the attorney's customary hourly rate;
> 6) whether the fee is fixed or contingent;
> 7) the time limitations imposed by the client or the circumstances;
> 8) the amount involved in the case and the results obtained;
> 9) the experience, reputation and ability of the attorneys'
> 10) the "undesirability" of the case;
> 11) the nature and length of the professional relationship with the client;
> 12) awards in similar cases.
> *Id.* (citing *Johnson v. GA Highway Express, Inc.,* 488 F.2d. 714 (5th Cir. 1974).

36.     All the factors support the fairness of this application, including the substantial time and labor required, the level of skill required, the inability to work on other cases due to acceptance of the case, the contingent fee agreement, the amount involved and the results obtained due to our skill and efforts, the complexity of the case which was vigorously defended, the undesirability of the case after plaintiff's former counsel withdrew following several adverse rulings by the Administrative Judge in the DOL, and the nature and length of the professional relationship with the client (almost 3 years).

37.     Here, the undersigned is a senior partner in this firm with over 26 years of litigation and trial experience. I have been representing both plaintiffs and defendants in complex employment and business litigation during the past 26 years. I have also successfully litigated and

tried to verdict over 60 medical malpractice cases. This combined litigation and trial experience, including business, employment and medical malpractice cases in both state and federal courts, contributed substantially to the successful prosecution of this action on plaintiff's behalf.

38.     Plaintiff's final Judgment will exceed $5,000,000 from the defendant, directly as a result of the work performed and valuable services rendered by my firm in this matter. This Court has already acknowledged that plaintiff is entitled to attorneys fees pursuant to The Sarbanes-Oxley Act upon granting my firm a charging lien in this matter. Accordingly, most or all of the attorney's fees awarded to my firm should be paid by the defendant, not the plaintiff. The fee sought is fair and reasonable, based upon the relevant factors. Therefore, it is respectfully submitted that there is no prejudice to plaintiff in granting my firm's request for a charging lien in the amount of 20% of the total amount awarded in this matter.

WHEREFORE, the undersigned attorney respectfully requests the Court enter an Order, pursuant to New York Judiciary Law § 475, fixing and enforcing a charging lien on behalf of WESTERMANN, SHEEHY, KEENAN, SAMAAN & AYDELOTT, LLP, in the amount of 20% of the total amount awarded ($1,001,917.00), plus reimbursement of expenses ($14,471.44) for a total charging lien in the amount of $1,016, 388.00, or in the alternative, for an amount determined to be fair and reasonable by the Court , and for such other and further relief as this Court may deem just and proper.

Dated: White Plains, NY
        September 16, 2016

Respectfully submitted,

WESTERMANN, SHEEHY, KEENAN,
SAMAAN & AYDELOTT, LLP

Christopher P. Keenan, Esq. (CK8161)
cpkeenan@westerlaw.com
222 Bloomingdale Road, Suite 305
White Plains, New York  10605
(914) 946-7770

14