UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULIO PEREZ,

       *Plaintiff*,

   -against-

PROGENICS PHARMACEUTICALS, INC.,

       *Defendant*.

Case No. 10-CV-08278 (LAP)

# DEFENDANT'S MEMORANDUM OF LAW IN <u>OPPOSITION TO PETITION FOR CHARGING LIEN</u>

FENSTERSTOCK & PARTNERS LLP
Blair C. Fensterstock (BC 2020)
Evan S. Fensterstock (EF 2084)
100 Broadway, 8th Floor
New York, New York 10005
Tel.: (212) 785-4100

*Attorneys for Defendant Progenics*
*Pharmaceuticals, Inc.*

Dated: September 26, 2016
   New York, New York

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................3

ARGUMENT ........................................................................................8

    I.    THE MOTION SHOULD BE DENIED BECAUSE MR. KEENAN ABANDONED DR. PEREZ AND DID NOT WITHDRAW FROM HIS REPRESENTATION WITH JUST CAUSE. .................................................................................8

    II.    IN THE ALTERNATIVE, THIS COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER MR. KEENAN'S WITHDRAWAL WAS WITH JUST CAUSE, AND IF SO, THE REASONABLE VALUE OF HIS FEES. ......................10

        A.    Mr. Keenan Should Be Estopped from Asserting That He Is Entitled to Recover a Percentage of Dr. Perez's Gross Recovery. ...................................11

        B.    Mr. Keenan Fails to Establish That He Is Entitled to Recover a Percentage of Dr. Perez's Gross Recovery ........................................................15

CONCLUSION ....................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

## **Federal Cases**

*Antonmarchi v. Consol. Edison Co. of New York*,
> 678 F.Supp.2d 235 (S.D.N.Y. 2010) .......................................................................... 8, 10

*Chesley v. Union Carbide Corp.*,
> 927 F.2d 60 (2d Cir. 1991) ...........................................................................................8

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
> 140 F.3d 442 (2d. Cir 1998) ........................................................................................10

*Markakis v. S.S. Mparmpa Christos*,
> 267 F.2d 926 (2d Cir. 1959) .........................................................................................9

*Marrero v. Christiano*,
> 575 F.Supp. 837 (S.D.N.Y. 1983) ................................................................................8

*New Hampshire v. Maine*,
> 532 U.S. 742 (2001) ........................................................................................11, 12, 13

*Petition of Harley & Browne*,
> 957 F.Supp. 44 (S.D.N.Y.1997) ...............................................................................8, 9

*Republic of Ecuador v. Chevron Corp.*,
> 638 F.3d 384 (2d Cir. 2011) .......................................................................................12

*Young v. U.S. Dep't of Justice*,
> 882 F.2d 633 (2d Cir. 1989) .......................................................................................12

## **State Cases**

*Chadbourne & Parke, LLP v. AB Recur Finans*,
> 18 A.D.3d 222 (1st Dep't 2005) ..................................................................................8

*Cohen v. Grainger, Tesoriero & Bell*,
> 81 N.Y.2d 655 (1993) .................................................................................................15

*Klein v. Eubank*,
> 87 N.Y.2d 459 (1996) ............................................................................................9, 10

*Lai Ling Cheng v. Modansky Leasing Co.*,
> 73 N.Y.2d 454 (1989) .................................................................................................16

*Mason v. City of New York*,
    67 A.D.3d 475 (1st Dep't 2009) ................................................................................10

*Matter of Cordes v. Purcell, Fritz & Ingrao*,
    89 A.D.2d 870 (2d Dep't 1982) ................................................................................16

*Paulsen v. Halpin*,
    74 A.D.2d 990 (4th Dep't 1980) ................................................................................16

*Reubenbaum v. B. & H. Express*,
    6 A.D.2d 47 (1st Dep't 1958) ................................................................................ 15, 16

*Shalom Toy, Inc. v. Members of N.Y. Prop. Ins. Underwriting Assoc.*,
    239 A.D.2d 196 (1st Dep't 1997) ................................................................ 9, 10, 14, 16

## Federal Statutes

18 U.S.C. § 1514A ..........................................................................................................3

18 U.S.C. § 1514A(c)(2)(C) ..........................................................................................15

## State Statutes

N.Y. Judiciary Law § 475 ..............................................................................................8

## Other Authorities

7 N.Y. Jur. 2d Attorneys at Law § 322 ..........................................................................9

Defendant Progenics Pharmaceuticals, Inc. ("Defendant" or "Progenics") respectfully submits this Memorandum of Law in Opposition to the Petition for Charging Lien pursuant to New York Judiciary Law ("NYJL") § 475 filed by Christopher P. Keenan ("Mr. Keenan") on behalf of Westermann, Sheehy, Keenan, Samaan, and Aydelott, LLP ("Westermann") on September 16, 2016 ("Motion").   ECF No. 324.   As detailed below, Progenics respectfully requests that the Court deny the Motion in its entirety or, in the alternative, direct a hearing to be held on whether Mr. Keenan withdrew from his representation of Plaintiff Dr. Julio Perez ("Plaintiff" or "Dr. Perez") with just cause, and, if so, determining the reasonable value of Mr. Keenan's services to Dr. Perez, if any, for which he has not been previously compensated.

## PRELIMINARY STATEMENT

This Motion is Mr. Keenan's third attempt to obtain attorney's fees in this action. Inexplicably, Mr. Keenan now seeks to recover an amount six times greater than what he sought in his previous applications to the Court.   However, Mr. Keenan is not entitled to recover *any* attorney's fees in this action because, according to Dr. Perez, Mr. Keenan wrongfully abandoned Dr. Perez in the middle of his case and forfeited his charging lien under New York law as a consequence.   In September 2012, after Mr. Keenan withdrew from his representation of Dr. Perez and filed a motion for charging lien in this action (which was denied with leave to renew), Dr. Perez brought a motion for sanctions against Mr. Keenan and Westermann under Rule 11 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").   In support of his motion for sanctions, Dr. Perez affirmed that Mr. Keenan withdrew from his representation because Dr. Perez was unwilling to modify their retainer agreement, and that Mr. Keenan's assertion that "irreconcilable differences" prevented him from representing Dr. Perez, which this Court relied on in granting Mr. Keenan's motion to withdraw, was a false and misleading statement.   Because Mr. Keenan's

withdrawal was not in good faith and prejudiced Dr. Perez, this Court should deny Mr. Keenan's request to fix and enforce a charging lien under NYJL § 475.

In the event this Court declines to deny the Motion in its entirety, Progenics requests that this Court find that Mr. Keenan is not entitled to recover attorney's fees calculated as a percentage of the gross amount awarded to Dr. Perez for two reasons.  First, Mr. Keenan should be estopped from asserting that he has a right to recover "20% of the gross amount awarded, plus reimbursement for documented disbursements," which totals $1,001,917.00 according to his calculations.[1]  In support of his August 31, 2015 motion for attorney's fees and costs, Mr. Keenan affirmed that he was entitled to recover a "reasonable" amount of attorney's fees calculated at an hourly rate, plus costs, which he asserted totaled $167,243.02 (ECF No. 264-1 ¶ 19).[2]  Thus, Mr. Keenan should be precluded from making a last-minute, opportunistic argument that he is entitled to fix and enforce a charging lien based on a contingency fee rather than a fee based on an hourly rate, which would result in a recovery six times greater than the amount he previously sought to recover from Progenics on August 31, 2015.  Second, Mr. Keenan failed to provide any legal or contractual authority supporting his contention that he is entitled to fix and enforce a charging lien based on a contingency fee.

Accordingly, Progenics respectfully requests that the Court deny the Motion, or, in the alternative, if the Court declines to deny Mr. Keenan's Motion, that the Motion be granted only to the extent of directing a hearing on the issue of Mr. Keenan's withdrawal for cause, and if said

---

[1] Affirmation of Christopher P. Keenan in Support of Motion dated September 16, 2016  ("Keenan Aff.") ¶ 32 (ECF No. 325).

[2] Progenics' incorporates herein the arguments made in its September 21, 2015 Memorandum of Law in Opposition to Mr. Keenan's Motion for Attorney's Fees (ECF No. 269 at 15-18) that Mr. Keenan failed to support his calculation of $167,243.02 because his time and billing records were duplicative, excessive, inaccurate, and were not kept contemporaneously.

withdrawal is found to be with cause, for a determination as to the reasonable value of Mr. Keenan's services, if any, for which he has not been previously compensated.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2010, Dr. Perez brought this action alleging that Progenics, Dr. Perez's previous employer, violated the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-Oxley Act").  ECF No. 1.[3]   Dr. Perez was formerly represented in this action by Mr. Keenan, and entered into a retainer agreement pursuant to which Dr. Perez agreed to pay Westermann "[33 1/3%] of the total gross amount recovered by suit . . . or [100%] of any amounts recovered for attorney's fees and costs, whichever is greater" in exchange for Mr. Keenan's representation.[4]

On February 10, 2012, Mr. Keenan moved to withdraw as counsel for Dr. Perez (ECF No. 20), citing an unsubstantiated "irreconcilable conflict between the plaintiff and [Mr. Keenan's] firm" as grounds for seeking his withdrawal. ECF No. 21 ¶ 10.  On February 17, 2012, without Dr. Perez submitting any opposition papers, Magistrate Judge George A. Yanthis ("Magistrate Judge Yanthis") granted Mr. Keenan's motion to withdraw as counsel, even though Mr. Keenan did not provide any factual justification in his motion papers to establish good cause for withdrawal (the "Withdrawal Order").  ECF No. 22.

On March 30, 2012, Dr. Perez submitted a letter to Magistrate Judge Yanthis requesting that the Court vacate the Withdrawal Order and reconsider Keenan's Motion to Withdraw.  ECF No. 28.  Dr. Perez disputed Mr. Keenan's assertion that "there exists an irreconcilable conflict between plaintiff and [Mr. Keenan's] firm" and argued that Mr. Keenan's assertion was "not a true or fair characterization of the circumstances."  *Id.* at 1.  Dr. Perez further argued that "Mr. Keenan was inappropriately seeking to modify my contract with him.  I disagreed with the

---

[3] On November 29, 2010, Mr. Keenan filed an Amended Complaint on behalf of Dr. Perez, which is the operative pleading in this case.  ECF No. 6.
[4] *See* Retainer attached as Exhibit A to Keenan Aff.

modification.  [Such disagreement] was certainly not an 'irreconcilable conflict' upon which any withdrawal could be justified, especially at this very late stage of the pre-trial process when I am at a position of maximum disadvantage."  *Id.*  Dr. Perez concluded that because such "mischaracterization was the basis for [Mr. Keenan's] firm's request to the court, <u>the resulting withdrawal amounts to an abandonment of the case by him and his firm</u>."  *Id.* (emphasis added). Dr. Perez also stated that "Mr. Keenan informed [Dr. Perez] in January and early February [2012] he had received requested documents from Defendant.  [Dr. Perez] repeatedly wrote to Mr. Keenan asking for an opportunity to review them, but [Keenan] has ignored [Dr. Perez's] requests."  *Id.* at 2.

On May 1, 2012, Magistrate Judge Yanthis denied Dr. Perez's request to vacate the Withdrawal Order.  ECF No. 28.  Notably, Magistrate Judge Yanthis also stated that "as no retaining lien was requested or granted, former counsel for [Dr. Perez] is directed to provide Mr. Perez with all relevant documents in file without delay, if not already done."  *Id.*

On June 13, 2012, Mr. Keenan filed a Petition for Charging Lien (ECF No. 32, refiled under ECF No. 36), which Mr. Keenan recorded on the docket sheet as his "First Motion for Attorney Fees *re-filed*," and an Affirmation in support thereof (ECF No. 32, refiled under ECF No. 37).

On June 27, 2012, Dr. Perez filed an Affirmation in Opposition to Mr. Keenan's Petition for Charging Lien.  ECF No. 35.  In such Affirmation, Dr. Perez again affirmed that there "<u>was no 'irreconcilable conflict' upon which any withdrawal could be justified</u>, especially 14 days before the discovery cut-off date when I was at a position of maximum disadvantage."  *Id.* ¶ 8 (emphasis added).  Dr. Perez again affirmed that "Mr. Keenan misled this Court" to support his withdrawal and that the "resulting withdrawal amounts to abandonment of the case by him and

his firm." *Id.* ¶ 9.  Dr. Perez also affirmed that "Mr. Keenan purports to have spent 430 hours of attorney time dedicated to this action.  I have repeatedly requested detailed time records reflecting the work actually done since March, 2009.  Surely, for them to be accurate, they must already exist and have been created contemporaneously.  To date, he has not provided them." *Id.* ¶¶ 11, 19.  Dr. Perez concluded that "<u>Mr. Keenan is not entitled to a charging lien because he withdrew without 'good cause.' . . . In essence, Mr. Keenan . . . abandon[ed] his client with total disregard of his client's interests at the most critical moment</u>, fully aware that his client would find it difficult to retain new counsel without incurring major expense after being unemployed for almost four years, essentially condemning him to proceed pro se." *Id.* at ¶¶ 12, 19 (emphasis added).

On August 23, 2012, Dr. Perez filed a Motion for Sanctions against Mr. Keenan and Westermann with a supporting Affidavit averring that Mr. Keenan (i) "was inappropriately seeking to modify [Dr. Perez's retainer agreement] with him" (ECF No. 51 at 5); (ii) "did not show satisfactory reasons for withdrawal simply because he did not have any" (*id.* at 6); (iii) "did not state any reason" for his withdrawal during "the *in camera* and *ex parte* meeting with Hon. George A. Yanthis on February 3, 2012" (*id.* at 1); and (iv) submitted false and misleading statements of material fact to the Court concerning Mr. Keenan's representation of Dr. Perez being "rendered unreasonably difficult" (*id.* at 5).  Dr. Perez further asserted that "[Mr.] Keenan's [false and misleading] assertions were the basis for his firm's request to the Court," which "relied on those assertions to grant [Mr. Keenan's] motion to withdraw." *Id.* at 5.  As a result of Mr. Keenan's withdrawal, Dr. Perez asserted that he "was at a position of maximum disadvantage" and that "the resulting withdrawal amounts to an abandonment of the case by [Mr. Keenan] and his firm." *Id.* at 5-6.  With respect to Mr. Keenan's first motion for charging lien

(filed in 2012), Dr. Perez affirmed that Mr. Keenan made the same "false or misleading statements of material fact [that were made in] his February 10, 2012 Motion to Withdraw affidavit" and "hampered [Dr. Perez's] discovery efforts" because "[Mr.] Keenan would not allow [Dr. Perez] to access [his] documents." *Id.* at 6. For these reasons, Dr. Perez argued that Mr. Keenan was "clearly" not entitled to a charging lien. *Id.* at 7. On September 7, 2012, Mr. Keenan filed his Affirmation in Opposition to Motion for Sanctions. ECF No. 44. On September 19, 2012, Dr. Perez filed his Reply Affirmation in Further Support of Motion for Sanctions, in which he affirmed that "Keenan's Affirmation completely fails [*sic*] any mention of some false or misleading statements in his filings, or fails to fully address or defend multiple false or misleading statements, including: . . . (g) the fraudulent and grossly inaccurate invoice he filed with the Court; . . ." ECF No. 48 ¶ 5.

On December 6, 2012, Magistrate Judge Yanthis denied Mr. Keenan's Petition for a Charging Lien with leave to renew. ECF No. 53. Magistrate Judge Yanthis also noted that Mr. Keenan "did not state in its motion to withdraw whether or not it was asserting a charging lien as required by Local Civil Rule 1.4. This issue will be addressed if the motion is renewed." *Id.*

On May 24, 2014, Judge Kenneth M. Karas ("Judge Karas") denied Dr. Perez's motion for sanctions for the reasons stated on the record at oral argument held on May 24, 2013. ECF No. 97.

A jury trial was held before Judge Loretta A. Preska ("Judge Preska") from July 28 to July 31, 2015. ECF Nos. 242-249. On July 31, 2015, the jury found in favor of Dr. Perez awarding him $1,662,951.00 in post-termination back pay damages. On August 13, 2015, judgment was entered on the docket. ECF No. 250.

On August 17, 2015, Judge Preska so ordered the post-trial briefing schedule, which states, in pertinent part, that August 31, 2015 is the last day for "*Plaintiff* to file its motion for attorneys' fees." ECF No. 252 (emphasis added).

On August 31, 2015, Mr. Keenan filed an improper motion for attorney's fees against Progenics seeking an excessive $167,243.02. ECF No. 262. Progenics opposed Keenan's motion for attorney's fees on the grounds that Keenan lacked standing to recover attorney's fees directly from Progenics. ECF No. 269 at 6-7.

On August 30, 2016, this Court issued an Order (i) denying Progenics' motion for new trial and remittitur; (ii) awarding Dr. Perez pre-judgment interest on his back pay award of $1,662,951.00, as well as front pay in the amount of $2,706,585.00; (iii) directing Dr. Perez and Progenics to submit their calculations regarding pre-judgment interest; and (iv) denying Mr. Keenan's motion for attorney's fees on the grounds that Keenan did not have standing to seek attorney's fees and costs directly from Progenics pursuant to the Sarbanes-Oxley Act. ECF No. 318. On September 8, 2016, Progenics submitted its calculation of pre-judgment interest to the Court. ECF No. 319. Progenics calculated pre-judgment interest to be $640,052.51. *Id.*

On September 16, 2016, Mr. Keenan filed the instant Motion seeking to fix and enforce a charging lien in the amount of $1,001,917.00. ECF No. 324. Dr. Perez has not filed a motion for attorney's fees in this action. The Petition for Charging Lien filed by Mr. Keenan improperly states that Westermann will move this Court "located at 300 Quarropas St. White Plains, NY 10601." *Id.* All proceedings in this action have taken place in the Manhattan branch of this Court, not at the White Plains branch. Further, Mr. Keenan incorrectly notices "FENSTERSTOCK LAW, PLLC" located at "521 Fifth Avenue, Suite 1700, New York, NY 10175" as the "Attorneys for Defendant." *Id.* Fensterstock & Partners LLP, located at 100

Broadway, 8th Floor, New York, NY 10005, represents Progenics in this matter, not the firm

listed by Mr. Keenan in his Petition for Charging Lien.  ECF No. 127.[5]

## ARGUMENT

I. **THE MOTION SHOULD BE DENIED BECAUSE MR. KEENAN ABANDONED DR. PEREZ AND DID NOT WITHDRAW FROM HIS REPRESENTATION IN GOOD FAITH.**

Mr. Keenan lost his right to fix and enforce a charging lien under NYJL § 475 in this

action when he withdrew from his representation of Dr. Perez without adequate justification.

NYJL § 475 provides, in pertinent part:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor. . . .  The court upon the petition of the client or attorney may determine and enforce the lien.

"[T]he lien created by [NYJL §] 475 . . . is enforceable in federal courts in accordance with its

interpretation by New York courts." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir.

1991).  "A charging lien is a security interest in the favorable result of litigation, giving the

attorney equitable ownership interest in the client's cause of action. . . ." *Chadbourne & Parke,*

*LLP v. AB Recur Finans*, 18 A.D.3d 222, 223 (1st Dep't 2005) (internal citation omitted).  "[A]n

attorney need not be counsel of record at the time a plaintiff receives judgment or settlement

proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record

at one point in the proceedings.".  However, "[i]t is well-settled that an attorney loses his [or her]

right to enforce a charging lien <u>if the attorney withdraws</u> or is discharged for cause."

*Antonmarchi v. Consol. Edison Co. of New York*, 678 F.Supp.2d 235, 240–41 (S.D.N.Y. 2010)

---

[5] Progenics respectfully requests that Mr. Keenan's Motion be denied on the grounds that the Petition for Charging Lien (ECF No. 324) is facially defective in that it improperly lists the White Plains branch of the U.S. District Court for the Southern of New York as the courthouse to which the Motion is returnable and fails to properly notice Progenics' counsel.

(emphasis added) (citing *Petition*, 957 F.Supp. at 48; *Marrero v. Christiano*, 575 F.Supp. 837, 840 (S.D.N.Y. 1983) (denying motion to fix a lien where law firm withdrew "without adequate justification")).  An attorney who abandons a case without just cause loses any charging lien for services which he or she may have had upon any judgment ultimately obtained.  *Klein v. Eubank*, 87 N.Y.2d 459, 464 (1996) (holding that "where an attorney's representation terminates and there has been no misconduct, no discharge for just cause and <u>no unjustified abandonment by the attorney</u>, the attorney's right to enforce the statutory charging lien is preserved without the need to resort to further negotiations or enter into new stipulations with the client" (emphasis added)); *see also Shalom Toy, Inc. v. Members of N.Y. Prop. Ins. Underwriting Assoc.*, 239 A.D.2d 196, 198 (1st Dep't 1997) ("unjustified abandonment by attorney" eliminates attorney's right to enforce lien under NYJL § 475); 7 N.Y. Jur. 2d Attorneys at Law § 322.

Here, Dr. Perez has maintained that Mr. Keenan's termination of their attorney-client relationship was not justified and has argued that Mr. Keenan is not entitled to a charging lien under NYJL § 475.  *See* ECF No. 35 ¶¶ 8-9, 11-12, 19.  Dr. Perez averred that Mr. Keenan (i) "inappropriately" sought to modify their retainer agreement; (ii) submitted false and misleading statements of material fact to the Court concerning Mr. Keenan's representation of Dr. Perez being "rendered unreasonably difficult" as there was no "irreconcilable conflict" upon which any withdrawal could be justified; and (iii) never presented any facts to the Court establishing an adequate justification for his withdrawal.  *See* ECF No. 51 at 5-7.  In fact, Dr. Perez specifically stated that Mr. Keenan's withdrawal "amount[ed] to an abandonment" of Dr. Perez's case and that, as a consequence, Mr. Keenan is "clearly" not entitled to a charging lien.  *Id.* at 5, 7.

NYJL § 475 "creates an equitable right," *Markakis v. S.S. Mparmpa Christos*, 267 F.2d 926, 927 (2d Cir. 1959), "for the protection of attorneys against the knavery of their clients. . . ."

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d. Cir 1998) (internal citation omitted).   Mr. Keenan is not entitled to benefit from this equitable right because, unlike a client that "run[s] away with the fruits of the cause without satisfying the legal demands of his attorney," Dr. Perez performed under the retainer agreement, desired that Mr. Keenan continue his representation, and objected to Mr. Keenan's withdrawal on the grounds that Mr. Keenan was not acting in good faith.   ECF No. 51 at 5-6.   As a result, this Court should find that Mr. Keenan did not terminate and withdraw from the attorney-client relationship with just cause and deny the Motion in its entirety.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER MR. KEENAN'S WITHDRAWAL WAS WITH JUST CAUSE, AND, IF SO, THE REASONABLE VALUE OF HIS FEES.

A hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis." *Antonmarchi*, 678 F.Supp.2d at 241 (citing *Mason v. City of New York*, 67 A.D.3d 475, 475 (1st Dep't 2009)); *see also Klein*, 87 N.Y.2d at 464, *Shalom Toy, Inc.*, 239 A.D.2d at 198.   Therefore, in the event this Court declines to deny the Motion, Progenics requests that this Court direct that a hearing be held on whether Mr. Keenan withdrew from representing Dr. Perez with just cause, and, if so, determining the reasonable value of Mr. Keenan's services to Dr. Perez, if any, for which he has not been previously compensated.

Further, this Court should hold that Mr. Keenan is not entitled to fix and enforce a charging lien based on a contingency fee because (i) he should be estopped from asserting that he has a right to recover any amount on a contingency basis when he previously sought to recover an amount calculated on an hourly basis – particularly where the amount is six times greater than that which he previously affirmed constitutes a "reasonable" recovery (and Progenics contends

that the amount of attorney's fees Mr. Keenan previously sought was unreasonable as it based on duplicative, excessive, and inaccurate time and billing records that were not contemporaneously kept (*see* ECF No. 269 at 15-18)); and (ii) he failed to provide any justification that he is legally or contractually entitled to recover a contingency fee under New York law.

### A. Mr. Keenan Should Be Estopped from Asserting That He Is Entitled to Recover a Percentage of Dr. Perez's Gross Recovery.

This Court should preclude Mr. Keenan from taking advantage of Dr. Perez's favorable verdict by asserting the argument that he is entitled to attorney's fees calculated on a contingency basis, which explicitly contradicts his earlier position that the "reasonable" value of his services was to be calculated on an hourly basis.

A potential consequence of a conflict between two factual statements made by the same party is judicial estoppel.  The Supreme Court has described the doctrine of judicial estoppel in the following terms:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citations omitted).  "[C]ourts have uniformly recognized" that the purpose of the doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," and because judicial estoppel is designed "to prevent improper use of judicial machinery," it is "an equitable doctrine invoked by a court at its discretion." *Id.* at 749–50. Courts have also recognized "that the circumstances under which

judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750 (internal quotation marks omitted); *see also Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989) ("The circumstances under which the doctrine could be applied are far from clear.").

Nevertheless, in evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (i) that a party's new position is "clearly inconsistent" with its earlier position; (ii) that the party seeking to assert this new position previously persuaded a court to accept its earlier position; and (iii) that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire*, 532 U.S. at 750–51. But the Supreme Court has made clear that these factors do not constitute "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751; *see also DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010) (noting that "[t]ypically, judicial estoppel will apply if" these factors are present). The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (internal quotation marks omitted); *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011). Accordingly, judicial estoppel should be applied here to preclude Mr. Keenan from contending that he is entitled to fix and enforce a charging lien based on a contingency fee.

First, Mr. Keenan's current position is "clearly inconsistent" with his previous position. In his June 13, 2012 Affirmation in support of his previous motion for charging lien, Mr. Keenan requested "that the Court fix a charging lien in this matter of $164,971.44 based upon the retainer

agreement with Julio Perez. . . ." ECF No. 37 ¶ 19. This amount was calculated by multiplying an hourly rate of $350.00/hour by 430 hours of legal work. *Id.* ¶¶ 3, 11. In his September 16, 2016 Affirmation in support of the instant Motion, Mr. Keenan contends that "[his] firm is entitled to attorney's fees in the amount of thirty-three and one-third percent of the total gross amount recovered by plaintiff . . . as per the written retainer agreement executed by plaintiff." ECF No. 325 ¶ 31. Not only is it indisputable that Mr. Keenan has assumed contrary positions with respect to what he believes he is entitled to recover, but he has done so "simply because his interests have changed." *New Hampshire*, 532 U.S. at 749. At the time Mr. Keenan withdrew from representing Dr. Perez in February 2012, this action was still in the discovery phase. Thus, Mr. Keenan ostensibly argued that he was entitled to recover his attorney's fees on an hourly basis because the case had not been resolved. Over three years after Mr. Keenan withdrew, in July 2015, Dr. Perez was awarded and subsequently entered a judgment in his favor. ECF No. 250. In a blatant about-face, Mr. Keenan changed his previous position by filing the instatnt Motion contending that he is entitled to recover a third of Dr. Perez's total judgment on a contingency basis. ECF No. 324 ¶ 31. Accordingly, Mr. Keenan has asserted contradictory positions in this action, which satisfies the first prong of the judicial estoppel test.

Second, Mr. Keenan previously persuaded this Court to accept his earlier position that he was entitled to a charging lien calculated on an hourly basis. In its August 30, 2016 Order, this Court ruled on Mr. Keenan's motion for attorney's fees, holding that Westermann is "entitled to a lien for the value of its services" and granting Mr. Keenan leave to renew his application for a charging lien. ECF No. 318 at 55-56. Accordingly, Mr. Keenan has asserted a new position when he previously persuaded this Court to accept his earlier position, which satisfies the second prong of the judicial estoppel test.

Third, if not estopped, Mr. Keenan would impose an "unfair detriment" against Progenics, who would be compelled to pay Mr. Keenan a windfall amount in attorney's fees that Mr. Keenan is not entitled to recover. Dr. Perez's retainer agreement does not provide Mr. Keenan the contractual right to fix and enforce a charging lien following the termination of representation, nor does it provide Mr. Keenan entitlement to any fees following the termination of representation. *See* Ex. A to Keenan Aff. In fact, Dr. Perez's retainer agreement is devoid of any provisions that set forth either of the party's obligations following termination of the attorney-client relationship. *Id.* The retainer agreement only provides Mr. Keenan "the option of seeking compensation on a quantum meruit basis" in the event that "the cause of action is settled by Client without the consent of Attorney" or "the Client is represented on appeal by another attorney. . . ." *Id.* Moreover, the retainer agreement only creates an obligation on the part of Dr. Perez to pay Mr. Keenan on an hourly basis "[i]n the event that this matter is resolved by remedying the employment discrimination and preserving the employer-employee relationship" between Dr. Perez and Progenics. *Id.* Simply put, Dr. Perez's retainer agreement only governs the attorney-client relationship, and does not contemplate any scenario in which such relationship is terminated. Thus, the retainer agreement should be construed against Mr. Keenan, the party who drafted it. *Shalom Toy, Inc.*, 239 A.D.2d at 198.

Because Mr. Keenan cannot rely on the retainer agreement to support his argument that he is entitled to any recovery of attorney's fees in this action, it would be patently unfair for this Court to permit Mr. Keenan to contend that he is entitled to recover attorney's fees on a contingency basis "as per the written retainer agreement executed by plaintiff," where no such language exists. Moreover, Progenics would be greatly prejudiced by Mr. Keenan's new position because it would be compelled to pay Mr. Keenan $836,945.56 more than what he

previously asserted was a "reasonable" amount of attorney's fees, in the event his Motion was granted. That is because, in all likelihood, rather than pay Mr. Keenan's attorney's fees out of his own recovery to satisfy a charging lien, Dr. Perez will move this Court to recover Mr. Keenan's attorney's fees directly from Progenics under the Sarbanes-Oxley Act. *See* 18 U.S.C. § 1514A(c)(2)(C); *see also* ECF No. 318 at 56 (granting Dr. Perez "leave to file a motion for attorney's fees within ten days of the Court's entry of a charging lien for Plaintiff's former counsel, Westermann."). Accordingly, the third and final prong of the judicial estoppel test is satisfied.

As each of the factors set forth in *New Hampshire* are found here, this Court should apply the doctrine of judicial estoppel and preclude Mr. Keenan from asserting a contradictory position that he is entitled to fix and enforce a charging lien for attorney's fees in an amount calculated on a contingency basis.

### B. Mr. Keenan Fails to Establish That He Is Entitled to Recover a Percentage of Dr. Perez's Gross Recovery.

Mr. Keenan has not cited any legal or contractual authority entitling him to fix and enforce a charging lien in this action based on a contingency fee.

As against the client, a discharged attorney may recover the "fair and reasonable value" of the services rendered, determined at the time of discharge and computed on the basis of quantum meruit. *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993) (citing *Reubenbaum v. B. & H. Express*, 6 A.D.2d 47, 48 (1st Dep't 1958)). Either the attorney or the client can require that the compensation be a fixed dollar amount determined at the time of discharge on the basis of quantum meruit (*Reubenbaum*, 6 A.D.2d at 48) or, in the alternative, they may agree that the attorney, in lieu of a presently fixed dollar amount, will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the

case (*id.*).   Thus, only if the client and attorney agree may the attorney receive a fee based on a percentage of the recovery.  *Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457–458 (1989); *see also Reubenbaum*, 6 A.D.2d at 48; *Shalom Toy, Inc.*, 239 A.D.2d at 197–98.

However, where the dispute is only between attorneys, the rules are somewhat different. "The outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case." *Lai Ling Cheng*, 73 N.Y.2d at 459 (citing *Matter of Cordes v. Purcell, Fritz & Ingrao*, 89 A.D.2d 870, 870 (2d Dep't 1982); *Paulsen v. Halpin*, 74 A.D.2d 990, 991 (4th Dep't 1980); *Reubenbaum, supra*, 6 A.D.2d at 49).   The percentage may be fixed at the time of substitution but, as several courts have recognized, is better determined at the conclusion of the case when such factors as the amount of time spent by each lawyer on the case, the work performed and the amount of recovery can be ascertained.  *Id.* (internal citations omitted).

Here, Mr. Keenan did not assert that he and Dr. Perez entered into any agreement at the time Mr. Keenan was discharged as Dr. Perez's counsel in this action that entitles Mr. Keenan to recover attorney's fees on a contingency basis.   As set forth in Part II.A *supra*, Dr. Perez's retainer agreement is inapplicable to the present issue because it fails to contemplate a termination of representation.  *See* Ex. A to Keenan Aff.   Moreover, in his Affirmation in support of the Motion, Mr. Keenan fails to take into account the work performed by Dr. Perez, who proceeded in this case as a self-represented *pro se* litigant from the time of Mr. Keenan's unjustified withdrawal all the way through the conclusion of trial (and continuing to this day with respect to post-trial motions).   Instead, "mindful of the fact that [he] withdrew as counsel

for plaintiff prior to the summary judgment motion and trial of this action," Mr. Keenan selects "a fee of 20% of the gross amount awarded" as "fair and reasonable compensation. . . ."  ECF No. 325 ¶ 32.  As Mr. Keenan cites to *zero* case law, or any other applicable authority, in his Affirmation, it is readily apparent that he merely selected this 20% figure out of thin air.  In light of Dr. Perez's multiple challenges to Mr. Keenan's withdrawal and the adequacy of Mr. Keenan's representation, as well as Dr. Perez's motion for sanctions against Mr. Keenan and Westermann, one might have expected to see at least some case law supporting Mr. Keenan's contention that 20% of Dr. Perez's gross recovery is "fair and reasonable" compensation.  No such support is found within Mr. Keenan's supporting Affirmation.  Thus, Mr. Keenan's request to fix and enforce a charging lien based on a contingency fee is factually and legally devoid of merit, and should be denied as a result.

## CONCLUSION

For the foregoing reasons, Progenics respectfully requests that this Court deny Mr. Keenan's Motion in its entirety.  Alternatively, if this Court declines to deny Mr. Keenan's Motion, Progenics respectfully requests that the Motion be granted only to the extent of directing a hearing on the issue of Mr. Keenan's withdrawal for cause, and if said withdrawal is found to be with cause, for a determination as to the reasonable value of Mr. Keenan's services, if any, for which he has not been previously compensated.

Dated: New York, New York
         September 26, 2016

                                        Respectfully Submitted,

                                        FENSTERSTOCK & PARTNERS, LLP


                                        By: _____
                                            Blair C. Fensterstock (BC 2020)
                                            Evan S. Fensterstock (EF 2084)

17

100 Broadway, 8th Floor
New York, New York 10005
Tel.: (212) 785-4100

*Attorneys for Defendant Progenics*
*Pharmaceuticals, Inc.*